[No. 32819. *En Banc.* July 28, 1955.]

SUSAN CYR, *Appellant,* v. THE DEPARTMENT OF LABOR AND
INDUSTRIES, *Respondent.*[1]

[1]Reported in 286 P. (2d) 1038.

*F. W. Loomis* and *Robert L. Charette,* for appellant.

*The Attorney General* and *Edwin R. Roberts, Assistant,* for respondent.

OTT, J.—April 19, 1950, the supervisor of industrial insurance denied a pension to the widow of a deceased workman. Her appeal to the board of industrial insurance appeals was filed June 14, 1950, and heard on its merits May 7, 1952. September 26, 1952, the board entered findings sustaining the supervisor and, from this order, the widow appealed to the superior court October 6, 1952. She has appealed from the judgment dismissing her case upon the ground that the certified record of the board did not contain sufficient evidence to submit the cause to a jury.

The decedent, Louis Cyr, was fifty-nine years of age at the time of his death. He had been an employee of his brother, who operated a garage, service station, and several trucks. For eleven years, the decedent had worked as a night attendant at this garage and service station from 5:00 p. m., until midnight. His duties consisted principally in servicing cars and trucks, including the five or six trucks belonging to his brother. The gasoline pumps were each equipped with a hose wound upon a separate reel. The hose reel contained a tension spring which required a pull, according to the testimony of one witness, of approximately twenty-five pounds to unwind the hose. During an average evening shift, it was estimated that decedent would unreel the hose thirty or forty times. The decedent was an efficient employee, and had made no complaints of ill health, either to his wife or to his employer.

On March 23, 1950, the decedent reported for work at 5:00 p. m., and walked out to the gasoline pumps. Jim Moe, a truck driver also employed by decedent's brother, had arrived shortly before and had parked his truck at

the pumps. Within the next four or five minutes, Jim Moe called for help. Edward Anderson, the shop foreman, rushed out to the truck. Decedent was lying on his back, apparently dying. Jim Moe said: "Louis is down, Louis dropped." Mr. Anderson testified that the gasoline hose was lying about one foot from decedent's right hand, the cap was off the gas tank of the truck, and about five feet of hose had been pulled from the reel on the pump. Louis Cyr was dead upon arrival at the hospital approximately thirty minutes later.

Jim Moe was not called as a witness. Mr. Anderson, the only other person in the garage at the time, stated that he did not see the decedent when he fell, and knew nothing about his activities between 5:00 p. m., and his collapse four or five minutes later. There was no testimony that decedent was actually engaged in the act of filling the gasoline tank of the truck, or that he had pulled out the hose, or that he had exerted any energy whatsoever. No autopsy was performed. The only medical testimony offered by appellant was that of a doctor who had never examined the decedent. The doctor's knowledge of the facts was confined to the information contained in a hypothetical question propounded by counsel for the appellant. The facts contained therein were substantially as indicated above, with the following exceptions:

(1) The question assumed that the hypothetical man actually pulled the hose from the reel and started to put gasoline in the truck, and

(2) It assumed that the hypothetical man used considerable pressure or physical effort in order to unwind the hose from the reel.

The doctor concluded that the decedent "suffered an acute coronary thrombosis," and further testified:

"In this case I would think that the man had an asymptomatic *pre-existing* arterial sclerosis of the coronary artery which perhaps was causing a clot in one of the large arteries slowly and that the exertion of March 23, 1950 increasing the rate of the heart action so increased the hemorrhage

and the sudden acute massive hemorrhage occurred in the artery; a clot developed and sudden death." (Italics ours.)

On cross-examination, the doctor testified:

"Q. Well, now, as to a coronary reason for his death, that would be in your judgment precipitated by the exertion, is that correct? A. I think this—not precipitated by the exertion. I think that this man had a *pre-existing* condition in his heart that was not noted either by him nor by symptoms that he was evidencing." (Italics ours.)

■ The sole question before this court is whether there is sufficient medical testimony in the record to establish a causal connection between the alleged industrial injury and the death of the workman. The causal relationship between an injury and a subsequent disability or death must be established by medical testimony. *Dayton v. Department of Labor & Industries,* 45 Wn. (2d) 797, 801, 278 P. (2d) 319 (1954), and case cited.

■ Four elements must be established in order to connect death from a heart condition with the employment of the decedent. They are (1) an acute heart condition, (2) death or disability as a result of the heart condition, (3) shock or exertion, either slight or great, in the course of employment, by which (4) the heart was subjected to a strain beyond its capacity to withstand. *Olympia Brewing Co. v. Department of Labor & Industries,* 34 Wn. (2d) 498, 502, 208 P. (2d) 1181 (1949), and cases cited.

With reference to the first and second elements, the widow and the employer testified that decedent had not complained of any illness, and the hypothetical question assumed a person in good health. The doctor disregarded this portion of the question and stated that "this man had a pre-existing condition in his heart." As no autopsy was performed, there is no evidence regarding such a condition, other than the doctor's assumption.

With reference to the third and fourth elements, the hypothetical question assumed that the workman was exerting effort while in the course of his employment. However, there was no testimony to the effect that the decedent

had done anything in the course of his employment from 5:00 p. m., the time he reported for work, until 5:04 p. m., the time of his collapse. The doctor, however, assumed exertion on the part of decedent, in order to reach the result that the industrial shock or strain in this instance was sufficient to cause death.

The only medical testimony presented by appellant to prove the necessary causal relationship was that of an expert witness who had not examined the decedent, and whose only information concerning him was contained in a hypothetical question. In view of the fact that the doctor ignored several of the essential elements of the hypothetical question, and assumed other conditions not included in the question, we must conclude that his testimony as an expert witness upon this issue was entirely destroyed. In *Berndt v. Department of Labor & Industries,* 44 Wn. (2d) 138, 150, 265 P. (2d) 1037 (1954), this court said:

"We have recently held that the material facts included in a hypothetical question must be established by the evidence. [Citing case.] It is equally clear that, when an expert who knows nothing about an individual except what is included in a hypothetical question assumes, as the basis for his opinion, the existence of certain conditions not included in that question and not necessarily inferable therefrom, and not established by the evidence, he destroys the validity of his answer."

Appellant in this case, by appealing from the adverse order of the board, assumed the burden of proof and of submitting sufficient substantial facts, as distinguished from a mere scintilla of evidence, to make a case for the jury. *Rambeau v. Department of Labor & Industries,* 24 Wn. (2d) 44, 48, 163 P. (2d) 133 (1945), and case cited.

In view of the fact that the validity of appellant's medical testimony was destroyed, we must conclude that there was a failure of medical proof to establish the causal relationship between the alleged industrial injury and the subsequent death of the workman. Therefore, appellant's claim for a widow's pension cannot be granted. This court

stated, in *Olympia Brewing Co. v. Department of Labor & Industries, supra,* at p. 505:

"We have again and again declared that, while the act [workmen's compensation act] should be liberally construed in favor of those who come within its terms, persons who claim rights thereunder should be held to strict proof of their right to receive the benefits provided by the act. [Citing cases.]"

▉ The evidence before the board was such that the minds of reasonable men could not differ, and the court properly withdrew the case from the jury. *Preston Mill Co. v. Department of Labor & Industries,* 44 Wn. (2d) 532, 536, 268 P. (2d) 1017 (1954).

The judgment of the trial court is affirmed.

ALL CONCUR.

---

September 7, 1955. Petition for rehearing denied.