[No. 2376–3.   Division Three.   April 18, 1978.]

SUPERIOR ASPHALT & CONCRETE CO., *Respondent,* v.
THE DEPARTMENT OF LABOR AND INDUSTRIES,
*Respondent,* JAMES W. BRESE,
*Appellant.*

*Thomas A. Prediletto* and *Nashem, Prediletto, Schussler & Halpin,* for appellant.

*Slade Gorton, Attorney General, Dinah C. Pomeroy, Assistant, Warren L. Dewar, Jr.,* and *Velikanje, Moore & Shore,* for respondents.

ROE, J.—Appellant is decedent's widow, who seeks an insurance benefit from respondent Department of Labor and Industries, claiming that her husband was killed in the course of his employment. The decedent was a supervisor for Superior Asphalt & Concrete Co. at a jobsite in

Mossyrock, Washington. He was provided with room and board by being reimbursed monthly for those expenses.

Superior Asphalt, the employer, owned a pickup truck which the decedent, as supervisor, could use for business reasons and also for his own personal use. In the latter case, he was expected to pay for his own gas and oil, which the employer paid, along with other maintenance expenses, for company–related use. It was normal that certain tools, owned by the employer, be in the truck at any given time.

The decedent was accustomed to driving the company truck from Mossyrock to his home in Ellensburg for weekends. This trip is approximately 200 miles, and normally takes 3 to 4 hours. His employer knew of and permitted this practice, but it in no way furthered the interests of Superior Asphalt.

On May 24, 1974, at the start of the Memorial Day weekend, the day's work ended at approximately 11 a.m. Some 12 hours later, near midnight, the decedent was driving the company truck, when, about 6 miles from Ellensburg, he crossed the center line and was killed in an accident. The investigating police officer was of the opinion that the decedent had been intoxicated. This was confirmed by the state toxicologist's test of decedent's blood, which showed an alcohol level of .23 percent.

The Department of Labor and Industries denied appellant's claim; that decision was reversed by the Board of Industrial Insurance Appeals. The Superior Court reversed the Board and reinstated the Department's decision.

The sole issue is whether the decedent was within the course of his employment when the fatal accident occurred.

For benefits to be due, the decedent must have been within the course of his employment, RCW 51.32.015, which is defined in RCW 51.08.013 as: "acting at his employer's direction or in the furtherance of his employer's business. . . ."

The general rule is that a worker is not, under ordinary circumstances, in the course of employment while going to or from the jobsite. *Hama Hama Logging Co. v.*

*Department of Labor & Indus.*, 157 Wash. 96, 288 P. 655 (1930). There is an exception, which is as well established as the rule, that a worker is within the course of employment when going to or from work in a vehicle furnished by the employer as an incident of employment pursuant to custom or contractual obligation, express or implied. *Venho v. Ostrander Ry. & Timber Co.*, 185 Wash. 138, 52 P.2d 1267 (1936). The rule will apply, and not the exception, if permissive use of the employer's vehicle is solely for the employee's convenience, and is neither incident to the contract of employment nor in furtherance of the employer's business. *Thompson v. Department of Labor & Indus.*, 10 Wn.2d 277, 116 P.2d 372 (1941). The rule will also apply if the employee is on a recreational excursion which is not incident to employment or in furtherance of the employer's interests. *Hama Hama Logging Co. v. Department of Labor & Indus., supra.*

The most recent case in point is *Aloha Lumber Corp. v. Department of Labor & Indus.*, 77 Wn.2d 763, 466 P.2d 151 (1970), in which the employee was a mechanic for a logging firm. He had the use of a company pickup truck for commuting to and from the jobsite, and for his own personal use. He had also been providing transportation for several other company employees who, like himself, were unable to take advantage of the company's crew bus. The employer paid all expenses for the truck; the employee repaired the truck himself, but then charged his employer for both his materials and his time. One weekday afternoon, while the employee was driving himself and another employee from the jobsite to the town in which they lived, an accident occurred. Both employees, the driver and the passenger, were held to have been within the course of their employment.

*Aloha* must be distinguished from the instant case for several reasons. In *Aloha,* the employer paid all the expenses of operating the truck; here, the employer expected the decedent to pay for gas and oil when using the truck for personal purposes. In *Aloha,* the accident

occurred on a Wednesday afternoon, on the route from the jobsite to the employee's local residence; here, the accident occurred while the decedent was traveling to spend a holiday weekend at his distant home, in which he did not live during the week. In *Aloha,* the truck was commonly used to transport other employees; here, there is no evidence that any other employees rode in the truck regularly besides the decedent's son–in–law.

Most importantly, *Aloha* involved no diversion away from the direct route home. If it had, and the injury had occurred during such diversion, the court states that "a different question would be presented." *Aloha Lumber Corp. v. Department of Labor & Indus., supra* at 773. That case must be limited to its facts. Here, the accident occurred more than 12 hours after the decedent left the jobsite; his direct route would normally have taken only 3 to 4 hours. From this, the trial court found that the decedent had left his course of employment and was engaged in a frolic of his own. Appellant contends that the decedent's frolic had ended, and that he had resumed his direct route. The only evidence to support this, however, is the fact that decedent was only about 6 miles from his destination, on one of the several routes, when the accident occurred. We need not decide whether, as appellant contends, coverage is restored when the divergence has been completed.[1] The trial court found that the decedent's had not been, and nothing appeared in the record to require the court to find otherwise. It was appellant's burden to prove her right to receive benefits under the act. *Cyr v. Department of Labor & Indus.,* 47 Wn.2d 92, 286 P.2d 1038 (1955).

After the accident, the state toxicologist, pursuant to RCW 46.52.065,[2] tested the decedent's blood, which showed

---

[1]*See* 1 A. Larson, *Workmen's Compensation* § 19.32 (1978); *but cf. Gray v. Department of Labor & Indus.,* 43 Wn.2d 578, 262 P.2d 533 (1953).

[2]RCW 46.52.065 reads, in pertinent part:
"Every coroner . . . shall submit to the state toxicologist a blood sample taken from all . . . who are killed in any traffic accident . . . The state toxicologist shall

.23 percent alcohol content. (The statutory presumption of intoxication arises at .10 percent.) Both the hearing examiner and the Board held that the test result was inadmissible under the statute. The superior court is to make its independent ruling on admissibility of evidence, *Mercer v. Department of Labor & Indus.*, 74 Wn.2d 96, 442 P.2d 1000 (1968). Since the court admitted this evidence, the next issue is whether or not such admission was proper.

The hearing examiner and the Board both refused to admit the test result because of the express language of RCW 46.52.065. However, RCW 68.08.106[3] clearly would allow admission of the test results had the coroner, rather than the state toxicologist, submitted them. *Hoffman v. Tracy*, 67 Wn.2d 31, 406 P.2d 323 (1965).

■ *Hoffman* was decided before RCW 46.52.065 was enacted, but we need not decide if the new statute would have changed its result. During the pendency of this appeal the legislature amended RCW 46.52.065,[4] and it now clearly provides that such test results be admissible. This amendment may be applied retrospectively. It does not involve any vested rights, obligations, duties or disabilities, but is merely a rule of evidence.

A law is said to be retrospective when it takes away or impairs a vested right acquired under existing laws, or

analyze these blood samples to determine the concentration of alcohol . . . The reports and records of the state toxicologist relating to analyses made pursuant to this section shall be confidential, and shall not be utilized as evidence in any civil or criminal action, . . ."

[3]RCW 68.08.106 reads, in pertinent part:
"In any case in which an autopsy or post mortem is performed, the coroner . . . upon his own authority or upon the request of the prosecuting attorney or other law enforcement agency having jurisdiction, may make . . . an analysis of the . . . blood . . . of a deceased person . . . [which is] needed or desired for evidence to be presented in court."

[4]A proviso to RCW 46.52.065 now reads: "PROVIDED FURTHER, That the results of these analyses may be admitted in evidence in any civil or criminal action where relevant and shall be made available to the parties to any such litigation on application to the court." Laws of 1977, 1st. Ex. Sess., ch. 50, § 1, p. 266, effective September 21, 1977.

creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past. *Hammack v. Monroe St. Lumber Co.,* 54 Wn.2d 224, 339 P.2d 684 (1959).

*State v. Malone,* 9 Wn. App. 122, 131, 511 P.2d 67 (1973). Unlike RCW 46.52.080, which mandates confidentiality of reports made by persons involved in an accident, *Gooldy v. Golden Grain Trucking Co.,* 69 Wn.2d 610, 419 P.2d 582 (1966), the statute involved here had more concern for efficient operation of the state toxicologist's laboratory than for a decedent's right to confidentiality. Such personal privacy rights terminate upon death. *Zenith Transp. Ltd. v. Bellingham Nat'l Bank,* 64 Wn.2d 967, 395 P.2d 498 (1964).

The court properly admitted the evidence of decedent's intoxication. It was relevant to the factual determination that the decedent had not, during that 12–hour period, been pursuing his course of employment or acting in furtherance of his employer's interests.

We believe, considering all the facts and circumstances of this case, that the trial court's decision was proper; the decedent was not within the course of his employment when the accident occurred.

The judgment of the Superior Court is affirmed.

MUNSON, C.J., and MCINTURFF, J., concur.

Reconsideration denied May 16, 1978.

Review denied by Supreme Court October 20, 1978.