# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| RUDOLPH E. KNIGHT, | ) | No. 69514-2-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER GRANTING MOTIONS |
| DEPARTMENT OF LABOR & | ) | FOR RECONSIDERATION, |
| INDUSTRIES, | ) | WITHDRAWING AND REPLACING |
| | ) | OPINION |
| Respondent. | ) | |
| | ) | |

Both parties filed motions for reconsideration of the court's April 7, 2014 opinion. The court has considered the motions and determined that reconsideration should be granted, the opinion withdrawn, and a substitute published opinion be filed.

Now, therefore, it is hereby

ORDERED that the opinion of this court filed April 7, 2014 is withdrawn and a substitute published opinion is filed.

Dated this 16th day of June, 2014.

_____ A CJ

_____ Cox, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| RUDOLPH E. KNIGHT, | ) | No. 69514-2-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF LABOR & | ) | |
| INDUSTRIES, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: June 16, 2014 |
| | ) | |

VERELLEN, A.C.J. — Under the "traveling employee" doctrine, the employee

bears the burden of proving that he or she is eligible for workers' compensation

benefits, including that he or she was not on a distinct departure from the course of

employment at the time of his injury. Because Rudolph Knight failed to meet this

burden, the trial court properly granted summary judgment for the Department of Labor

and Industries (Department). We affirm and deny Knight's request for attorney fees and

costs.

## FACTS

In December 2008, Knight worked as a catastrophic claims adjustor for State

Farm. Although his home base was in Seattle, he began working on assignment in

Galveston, Texas, shortly after Hurricane Ike struck the area. While working on

location, Knight stayed in a hotel in a suburb of Houston and used a company van for

transportation. He was responsible for homeowner and flood claims in Texas City, directly across the bay from Galveston Island.

Knight returned to Texas on December 1 after spending Thanksgiving weekend visiting family. He was not scheduled to work December 2 but decided to drive 30 miles from his hotel to Galveston Island to survey the devastation and get a better understanding of what was going on there. He explained that even though he had already been working there for two months, he wanted to survey the area because he was coming off of a long weekend away and he wanted to get "back into the frame of mind of dealing with that specific situation."[1]

While Knight was driving back to his hotel, he noticed some men riding dune buggies and pulled onto the beach to watch. This is the last thing that he remembers until his wife visited him in the hospital more than 24 hours later.

His wife talked to him around 1:00 p.m. on December 2 while he was watching the dune buggy riders and she heard the riders approach Knight. She then ended the phone call so that she could go to work.

At 5:30 p.m., paramedics responded to a 911 call and found Knight lying on his back in the surf and mumbling "help me."[2] According to the lead paramedic, Craig Wunstel, Knight had some small lacerations and bruising and was treated with fluid for both hypothermia and intoxication. Wunstel asked Knight if he had been drinking or using drugs. Knight denied using drugs but said that he "had a lot of alcohol to drink."[3]

---

[1] Report of Proceedings (RP) (June 20, 2011) at 77.

[2] RP (June 22, 2011) at 8.

[3] Id. at 23.

2

Knight also told Wunstel that the last thing he remembered was getting tired and passing out on the beach.

Police Officer Ernesto Garcia also responded to the scene. While inside the ambulance with Knight, he observed that Knight smelled of alcohol. He did not take any witness statements from anyone else on the beach that evening. Neither Wunstel nor Officer Garcia know how Knight was injured.

Dr. Blake Chamberlain treated Knight at the hospital emergency room. Dr. Chamberlain testified that Knight smelled of alcohol and that Knight told him that he drank "[a] lot."[4] Knight also told Chamberlain that he had been "riding in [the] dunes" but could not remember what type of vehicle he was on.[5] Based upon Knight's actions, slurred speech, sleepiness, and the smell of his breath, Dr. Chamberlain's initial diagnosis was alcohol intoxication. Dr. Chamberlain did not notice any large bruises or signs of apparent trauma but ordered two CT (computed tomography) scans. The CT scans showed a subarachnoid hemorrhage in Knight's brain. Dr. Chamberlain amended his diagnosis to include this injury.

Knight was then transferred to Methodist Hospital because it was better equipped to handle his brain injury. Testing at Methodist Hospital indicated that Knight's subarachnoid hemorrhage was likely caused by a brain injury and not an aneurysm. Bruising on Knight's face indicated that he suffered a contrecoup injury, meaning there was some kind of blunt trauma to his head that caused a "sloshing" of the brain where the brain knocked up against the other side of the skull and caused his injury.

---

[4] RP (June 22, 2011) at 73.

[5] Id.

Dr. Chamberlain testified this type of injury could be sustained by falling on sand and was not consistent with an injury received by a blow to the head with a fist, but admitted that there was no way to know for sure how Knight was injured.

Unfortunately, while at Methodist Hospital, Knight's cognitive condition worsened. He was not able to express himself clearly and he developed a wandering eye. This was possibly due to complications from an angiogram performed at the hospital.

Knight filed an application for workers' compensation benefits. The Department ultimately rejected his claim, and Knight appealed to the Board of Industrial Insurance Appeals (Board). The Board affirmed the Department's decision, finding that Knight suffered his head injury because he became intoxicated, collapsed on the beach, and struck his head on the sand. It concluded that Knight's decision to become intoxicated was a distinct departure from his course of employment.

Knight appealed to King County Superior Court. The Department moved for summary judgment, arguing that there was no genuine issue of material fact that Knight abandoned his employment when he drank to the point of intoxication. In the alternative, the Department argued that Knight abandoned his employment by driving from his hotel to the beach and watching the dune buggy riders. The trial court agreed with both arguments and granted summary judgment to the Department.

Knight appeals.

## DISCUSSION

Judicial review of a decision by the Board is de novo and is based solely on the evidence and testimony presented to the Board.[6] Either party is entitled to a jury trial to resolve factual disputes, but "the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same."[7] Appeals are governed by the civil rules, including CR 56 for summary judgment.[8]

Summary judgment decisions are reviewed de novo.[9] Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[10] A genuine issue of material fact exists if "reasonable minds could differ on the facts controlling the outcome of the litigation."[11] "When determining whether an issue of material fact exists, the court must construe all facts and inferences in favor of the nonmoving party."[12]

"Summary judgment is subject to a burden-shifting scheme."[13] The initial burden to show the nonexistence of a genuine issue of material fact is on the moving party.[14]

---

[6] RCW 51.52.115; Johnson v. Weyerhaeuser Co., 134 Wn.2d 795, 800 n.4, 953 P.2d 800 (1998); Dep't of Labor & Indus. v. Fankhauser, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993).

[7] RCW 51.52.115.

[8] RCW 51.52.140; McClelland v. ITT Rayonier, Inc., 65 Wn. App. 386, 390, 828 P.2d 1138 (1992)).

[9] Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

[10] CR 56(c).

[11] Ranger Ins. Co., 164 Wn.2d at 552.

[12] Id.

[13] Id.

[14] Id.; see also Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

"A defendant may move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case."[15] Once this initial showing is made, the burden shifts to the plaintiff to make a showing sufficient to establish the existence of an element essential to his case.[16] In a claim for workers' compensation benefits, the injured worker bears the burden of proving that he is entitled to benefits.[17] If this burden cannot be met as a matter of law, summary judgment for the Department is proper. A nonmoving party must set forth specific facts showing a genuine issue for trial and may not rely on speculation.[18]

*Workers' Compensation Benefits*

Knight argues that the Department had the burden on summary judgment to show that Knight abandoned the course of his employment at the time of his injury. We disagree.

In Washington, an injured worker's right to benefits is statutory. An employee shall receive benefits for an injury only if it occurs "in the course of employment."[19] While the act should be liberally construed in favor of those who come within its terms,

---

[15] Sligar v. Odell, 156 Wn. App. 720, 725, 233 P.3d 914 (2010).

[16] Id. (quoting Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989)).

[17] Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus., 19 Wn. App. 800, 804, 578 P.2d 59 (1978) (holding that it was appellant's burden to prove that her husband's death occurred in the scope of employment and that she was eligible for widow's benefits).

[18] Young, 112 Wn.2d at 225-26.

[19] RCW 51.12.010.

individuals who apply for benefits are held to strict proof of an injury in the course of employment.[20]

In <u>Ball-Foster Glass Container Co. v. Giovanelli</u>, our Supreme Court adopted the traveling employee doctrine for employees on out-of-town business travel.[21] "A traveling employee is generally considered to be in the course of employment continuously during the entire trip, except during a distinct departure on a personal errand."[22] Under this doctrine, "when travel is an essential part of employment, the risks associated with the necessity of eating, sleeping, and ministering to personal needs away from home are an incident of employment even though the employee is not actually working at the time of injury."[23] The rule recognizes that a traveling employee is subjected to hazards he could otherwise avoid if he were home and that the hazards of travel become the hazards of the employment.[24] "Since the traveling employee doctrine is an exception to the general rule that injury is not compensable when it occurs off the employer's premises, when the worker is not actually engaging in work activity, coverage should be limited to injuries fairly attributable to the risks of travel."[25]

---

[20] <u>Cyr v. Dep't of Labor & Indus.</u>, 47 Wn.2d 92, 97, 286 P.2d 1038 (1955) (quoting <u>Olympia Brewing Co. v. Dep't of Labor & Indus.</u>, 34 Wn.2d 498, 505, 208 P.2d 1181 (1949)); <u>DeHaas v. Cascade Frozen Foods, Inc.</u>, 23 Wn.2d 754, 759, 162 P.2d 284 (1945); <u>Clausen v. Dep't of Labor & Indus.</u>, 15 Wn.2d 62, 68, 129 P.2d 777 (1942)).

[21] 163 Wn.2d 133, 142, 177 P.3d 692 (2008).

[22] <u>Id.</u>

[23] <u>Id.</u>

[24] <u>Id.</u> (quoting <u>Chavez v. ABF Freight Sys.</u>, Inc., 2001-NMCA-039, 130 N.M. 524, 528, 27 P.3d 1011).

[25] <u>Id.</u> at 145.

The proper inquiry in determining if a traveling employee has left the course of employment is "whether the employee was pursuing normal creature comforts and reasonably comprehended necessities or strictly personal amusement ventures."[26] In making this inquiry, courts analogize to the "personal comfort" doctrine, i.e., that acts of personal comfort "'do not take the employee out of the scope of employment because they are necessary to his health and comfort.'"[27] A "distinct departure" occurs only if "the extent of the deviation is so substantial that an intent to abandon the job temporarily may be inferred or the method chosen is so unusual and unreasonable that the act cannot be considered incidental to the course of employment."[28]

Generally, intoxication is a defense to paying benefits when the claimant has become so intoxicated that he abandons his employment.[29] This generalization also makes sense in the traveling employee context. While drinking alcohol in moderation may be considered a personal comfort if it helps an employee relax at the end of the workday, drinking to the point of intoxication is a distinctly personal activity that is

---

[26] Id. at 143.

[27] Id. at 150 (quoting N.&L. Auto Parts Co. v. Doman, 111 So.2d 270, 272 (Fla. Dist. Ct. App. 1959)).

[28] Id.

[29] Flavorland Indus., Inc. v. Schumacker, 32 Wn. App. 428, 434, 647 P.2d 1062 (1982). An exception exists if an employer encourages, finances, or creates an atmosphere that allows employees to become intoxicated. See id. at 435-36 (where there was evidence that employer knew employee drank at a weekly meeting, expected him to buy drinks for others, encouraged the drinking, and paid for the drinks, whether employee became so intoxicated that he abandoned his employment was properly presented to the jury). But such facts are not alleged in this case.

outside of the scope of employment.[30] Becoming intoxicated is not necessary to the employee's health and comfort and, in fact, may be detrimental to the employee's health. Furthermore, Knight presents no argument and cites no authority that an employee who drinks to the point of intoxication remains within the scope of employment under the traveling employee doctrine, especially where the employer had no involvement in such intoxication.

Knight and the Department both agree that the traveling employee doctrine applies because Knight was traveling on assignment for State Farm in Texas when he was injured. But they disagree whether Knight was still within the scope of his employment at the time of his injury. The Department argues that Knight was on a personal errand when he stopped to watch the dune buggy riders at 1:00 p.m. and when he drank to the point of intoxication. Even assuming that he was still within the course of his employment when he stopped to watch the dune buggy riders, there is substantial evidence that by 5:30 p.m., he was both intoxicated and injured. Sometime between 1:00 p.m. and 5:30 p.m., Knight drank to the point of intoxication and suffered his head injury. There is no direct or circumstantial evidence as to which event occurred first. Because of this lack of evidence, it is impossible to determine whether Knight was injured before or after he became intoxicated. Therefore, the outcome of this case depends upon who had the burden of proving whether or not Knight was on a distinct departure from his employment due to his intoxication at the time of his injury.

---

[30] See, e.g., Superior Asphalt, 19 Wn. App. at 806 (in the context of the "coming and going rule," decedent's intoxication was evidence that he was not in the course of his employment when involved in an accident during his commute).

In determining which party bears this burden, we find <u>Superior Asphalt &</u> <u>Concrete Co. v. Department of Labor & Industries</u> helpful.[31] There, Division Three of this court considered who had the burden of proving whether an employee was acting in the course of employment while commuting from the job site in a company car. Generally, an employee is not in the course of employment while going to or from the job site unless the employer furnishes the employee's vehicle as an incident of employment.[32] But if the vehicle is provided solely for the employee's convenience or the employee is "on a recreational excursion which is not incident to employment or in furtherance of the employer's interests," his commute using a company car is not within the course of employment.[33]

In <u>Superior Asphalt</u>, the employee used his employer's vehicle to commute three to four hours from the job site to his home for the weekend.[34] Work ended around 11:00 a.m. and the employee began his commute home.[35] Approximately 12 hours later, the employee was six miles from home when he drove the employer's car across the center line, collided with another car, and died.[36] The employee's blood alcohol level was 0.23.[37] Due to the amount of time that lapsed after the employee left the job site and his intoxication, the superior court concluded that the employee's widow was not entitled to

---

[31] 19 Wn. App. 800, 578 P.2d 59 (1978).

[32] <u>Id.</u> at 802-03.

[33] <u>Id.</u> at 803.

[34] <u>Id.</u> at 802.

[35] <u>Id.</u>

[36] <u>Id.</u>

[37] <u>Id.</u>

benefits because the employee left the course of his employment and was engaged in a "frolic of his own" at the time of the accident.[38] On appeal, the employee's widow argued that the employee had resumed his direct route back home at the time of the accident.[39] Division Three affirmed, holding that the widow did not meet her burden to prove that the employee ended his frolic at the time of the accident and that "[i]t was appellant's burden to prove her right to receive benefits under the act."[40]

Although Superior Asphalt involved the "coming and going" rule rather than the traveling employee doctrine, we find it is instructive. If a commuting employee has the burden to show that he was not on a frolic at the time of his injury, a traveling employee should also bear the burden of showing that he was not on a distinct departure from his employment at the time of injury. Under both doctrines, the employee must establish that an injury occurred in the course of employment.

When the Department moved for summary judgment, it had the initial burden to show the nonexistence of a genuine issue of material fact. The Department met this burden by showing that there is an absence of evidence to support Knight's case; mainly that there is no evidence that he was still within the scope of employment at the time of his injury.

The burden then shifted to Knight to show that there is a genuine issue of material fact that he was within the scope of his employment at the time of his injury.

---

[38] Id. at 804.

[39] Id.

[40] Id.

Based on the lack of evidence, any theory as to how his injury occurred was purely speculative and summary judgment was warranted.

Knight argues that Ball-Foster created a presumption that a traveling employee is acting within the course of employment at the time of injury unless the Department proves that the employee departed on a personal errand. But Knight misconstrues the Ball-Foster analysis. Knight relies upon the Supreme Court's question whether the *employer* established that the employee distinctly departed from his employment at the time of injury. He asserts that the Supreme Court therefore signaled that the employer always has this burden. But in Ball-Foster, the employer was self-insured and the Board ordered it to pay for the employee's benefits.[41] The employer appealed to the trial court, and the Department moved for summary judgment.[42] As the nonmoving party, the employer then had the burden to demonstrate a genuine issue of material fact for trial. Here, because Knight is the nonmoving party, he bears this burden. Ball-Foster's straightforward application of the rules on summary judgment did not articulate a presumption in favor of the employee. No Washington case law supports Knight's contention that the employer bears the burden of establishing a distinct departure under the traveling employee doctrine.[43]

---

[41] Ball-Foster, 163 Wn.2d at 139.

[42] Id.

[43] Knight also relies on Shelton v. Azar, Inc., 90 Wn. App. 923, 954 P.2d 352 (1998). But in Shelton, the court applied the traveling employee doctrine to award benefits to an employee injured in a car accident on his way from the airport to a hotel. Id. at 926. A third party to the accident argued that the coming and going rule should be applied to deny benefits because the employee had been at that work location for over two months. Id. at 936. That case did not in any way address who has the burden to prove that a traveling employee is on a distinct departure from employment at the time of an injury.

Knight argues that his decision to stop on the beach and watch the dune buggy riders was an activity within the personal comfort doctrine and did not take him outside of the scope of employment. Even if we accept this premise, becoming intoxicated is beyond the personal comfort doctrine, and Knight did not meet his burden on summary judgment to show that his injury occurred before he became intoxicated.

Knight argues that the Department provided no direct evidence that he was intoxicated before or at the time of his injury. But, as discussed above, it was not the Department's burden to show that Knight was intoxicated at the time of his injury. Rather, Knight had the burden to show that at the time of his injury, he had not distinctly departed from the course of his employment by becoming intoxicated.

Knight argues that whether he abandoned his employment through intoxication is a material question of fact for the jury. In support of this argument, he cites Orris v. Lingley.[44] But Orris is readily distinguished. In that car accident case, the court held that summary judgment was inappropriate because a toxicology report raised a genuine issue of material fact about whether the driver was so intoxicated that he abandoned the course of his employment.[45]

---

[44] 172 Wn. App. 61, 288 P.3d 1159 (2012), review denied, 177 Wn.2d 1020 (2013).

[45] Id. at 68. Orris was injured in a car accident and Lingley, the driver, died. Id. at 64. The Department awarded Orris workers' compensation benefits for his injuries. Id. The death investigation toxicology report showed the presence of THC (tetrahydrocannabinol) and cannabinoids in Lingley's body. Id. at 67. Orris then sued Lingley's estate for negligence, but the estate argued that Orris's receipt of benefits was his exclusive remedy under the act, precluding a lawsuit against the estate. Id. at 66. The trial court granted summary judgment for the estate, but Division Three of this court reversed, recognizing that while the act generally provides an exclusive remedy for injuries, an injured worker may sue a negligent coworker if that coworker was not acting in the course of employment at the time of the injury. Id. at 66.

Knight does not raise a genuine issue of material fact precluding summary judgment. The Department presented extensive evidence that Knight was intoxicated when he was found and treated after 5:30 p.m. Both Officer Garcia and Dr. Chamberlain testified that Knight smelled like alcohol. And paramedic Wunstel and Dr. Chamberlain testified that Knight admitted that he had a lot of alcohol to drink. Knight cites to no evidence in the record that raises a genuine issue of material fact that he was not intoxicated.

Knight also argues that Dr. Chamberlain testified that even if Knight was intoxicated, his head injury could have occurred before intoxication. But because there is no evidence as to what happened to Knight between 1:00 p.m. and 5:30 p.m., this testimony is pure speculation and does not defeat summary judgment.

Knight argues that summary judgment was inappropriate because "a jury could reasonably find that Mr. Knight was the victim of a crime or accident; that he did not purposefully drink at all or at the very least did not drink to the point of abandonment; and that when the injury occurred Mr. Knight was not intoxicated."[46] But Knight points to no evidence in the record supporting any genuine issue of material fact for trial. Because there is absolutely no evidence of what happened to Knight between 1:00 p.m. and 5:30 p.m. except that he concluded the period both injured and intoxicated, his theories rely on pure speculation.

Knight argues that other jurisdictions do recognize a presumption that a traveling employee is within the scope of employment and that it is the employer or agency's burden to show a distinct departure. Because neither the statute nor Washington case

---

[46] Appellant's Br. at 31.

law support such a presumption and burden shift to the Department, we do not find this argument persuasive.

*Attorney Fees*

Knight requests reasonable attorney fees and costs on appeal under RAP 18.1 and RCW 51.52.130. RAP 18.1 allows an award of attorney fees and costs on appeal if applicable law authorizes them. An award of fees and costs under RCW 51.52.130 requires both that the injured worker requesting fees prevail in the action and that the accident fund or medical aid fund be affected.[47] Because Knight does not prevail on appeal, he is not entitled to attorney fees or costs under this authority.

We affirm the trial court.

WE CONCUR:

_____

Cox, J.

_____

Appelwick, J.

___

[47] <u>Pearson v. Dep't of Labor & Indus.</u>, 164 Wn. App. 426, 445, 262 P.3d 837 (2011).