# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| MARISA BAVAND,<br><br>              Appellant,<br><br>    v.<br><br>CHASE HOME FINANCE LLC, a Delaware limited liability company; FLAGSTAR BANK FSB, a federal savings bank; FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States government sponsored enterprise; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; NORTHWEST TRUSTEE SERVICES, INC., a Washington corporation; DOE DEFENDANTS 1-10,<br><br>              Respondents. | No. 71724-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: July 20, 2015 |

LEACH, J. — After Marisa Bavand's lender initiated nonjudicial foreclosure proceedings following Bavand's default on her mortgage loan, Bavand filed suit. She appeals the summary judgment dismissal of her complaint for injunctive relief and damages against Chase Home Finance LLC, Flagstar Bank FSB, Federal National Mortgage Association (Fannie Mae), Mortgage Electronic Registration Systems Inc. (MERS), and Northwest Trustee Services Inc. (NWTS). She claims that genuine issues of material fact exist as to the respondents' alleged violations of the deeds of trust act (DTA or act), chapter 61.24 RCW, the Consumer Protection Act (CPA), chapter 19.86 RCW, and the

Criminal Profiteering Act, chapter 9A.82 RCW. She challenges certain trial court evidence rulings. And she contends that the court abused its discretion by denying her request for a continuance of the summary judgment hearing. We conclude that the trial court did not abuse its discretion in its evidentiary decisions or in denying Bavand's request for a continuance. And because no trustee's sale of Bavand's property occurred and Bavand identifies no genuine issue of material fact related to any deceptive, unfair, or criminal act by the respondents, summary dismissal of her claims was proper. We affirm.

## Background

In March 2004, Marisa Bavand borrowed $160,000 from Capital Mortgage Corp. to finance the purchase of an investment property, signing a promissory note and companion deed of trust. The deed of trust lists Capital Mortgage as the lender, "Joan H. Anderson, EVP on behalf of Flagstar Bank, FSB" as the trustee, and MERS, "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns," as beneficiary. Capital Mortgage endorsed the note to Flagstar, and Flagstar endorsed in blank. Flagstar documents list Fannie Mae as the investor as of April 2004. Chase Home Finance began servicing the loan after transfer of the loan from Flagstar. Chase took physical possession of the note in November 2004.

Beginning September 1, 2010, Bavand failed to make her monthly loan payments. On February 1, 2011, MERS signed an assignment of deed of trust,

transferring its interest as beneficiary nominee to Chase. The same day, Chase appointed NWTS as successor trustee.[1]

Also on February 1, 2011, NWTS, acting as Chase's "duly authorized agent," sent Bavand a notice of default. The notice identified Chase as the creditor, "Beneficiary (Note Owner)," and servicer of the loan. The notice included contact information for Chase and for NWTS.

On May 1, 2011, Chase Home Finance LLC merged with JPMorgan Chase Bank NA. On January 26, 2012, a JPMorgan Chase Bank vice president signed a beneficiary declaration stating that JPMorgan Chase Bank was the holder of the promissory note.

In early May 2012, NWTS issued a notice of trustee's sale. The notice set a sale for August 10, 2012. On August 8, 2012, Bavand's counsel asked that the sale be postponed, alleging deficiencies related to notice, among other concerns. On August 10, NWTS confirmed via e-mail that the sale would be postponed until August 24 for "good faith investigation based on the issues presented." On August 20, Bavand filed this lawsuit, alleging wrongful foreclosure and violations of the DTA, the CPA, and the Criminal Profiteering Act, chapter 9A.82 RCW. NWTS canceled the trustee's sale, and it has not been rescheduled.

In January 2014, all defendants moved for summary judgment dismissing Bavand's claims. In February, Bavand filed an opposing memorandum in which

---

[1] Chase made this appointment through its attorney-in-fact Ken Patner, an assistant vice president of NWTS.

she requested a continuance under CR 56(f). She also filed the declaration of Tim Stephenson. The defendants moved the court to strike Stephenson's declaration.

On March 26, 2014, the trial court granted the defendants' motions for summary judgment. The trial court struck Stephenson's declaration.

Bavand appeals.

## Analysis

We review de novo a trial court's order granting summary judgment.[2] Summary judgment is appropriate if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law.[3] A genuine issue of material fact exists if reasonable minds could differ about the facts controlling the outcome of the lawsuit.[4]

A defendant may move for summary judgment by demonstrating an absence of evidence to support the plaintiff's case.[5] If the defendant makes this showing, the burden shifts to the plaintiff to establish the existence of an element

---

[2] Janaszak v. State, 173 Wn. App. 703, 711, 297 P.3d 723 (2013) (citing Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003)).

[3] Janaszak, 173 Wn. App. at 711 (citing CR 56(c)); Michak, 148 Wn.2d at 794-95).

[4] Janaszak, 173 Wn. App. at 711 (citing Hulbert v. Port of Everett, 159 Wn. App. 389, 398, 245 P.3d 779 (2011)).

[5] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Sligar v. Odell, 156 Wn. App. 720, 725, 233 P.3d 914 (2010)), review denied, 181 Wn.2d 1023 (2014).

essential to her case.[6] If the plaintiff fails to meet her burden as a matter of law, summary judgment for the defendant is proper.[7]

<u>Deeds of Trust Act</u>

The DTA creates a three-party transaction, in which a borrower conveys the mortgaged property to a trustee, who holds the property in trust for the lender as security for the borrower's loan.[8] If a borrower defaults, a lender may nonjudicially foreclose by a trustee's sale.[9] The act furthers three goals: (1) an efficient and inexpensive foreclosure process, (2) adequate opportunity for interested parties to prevent wrongful foreclosure, and (3) stability of land titles.[10] Because the DTA eliminates many of the protections afforded borrowers under judicial foreclosures, "lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor."[11] A trustee has a duty of good faith to all parties and "is not merely an agent for the lender or the lender's successors."[12]

The DTA describes the steps a trustee must take to start a nonjudicial foreclosure. Among other requirements, a trustee may not schedule a sale

---

[6] Knight, 181 Wn. App. at 795 (citing Sligar, 156 Wn. App. at 725).

[7] Knight, 181 Wn. App. at 795-96.

[8] Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012); Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012).

[9] Bain, 175 Wn.2d at 93; Albice, 174 Wn.2d at 567.

[10] Albice, 174 Wn.2d at 567 (citing Cox v. Helenius, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)).

[11] Albice, 174 Wn.2d at 567 (citing Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007); Koegel v. Prudential Mut. Sav. Bank, 51 Wn. App. 108, 111-12, 752 P.2d 385 (1988)).

[12] RCW 61.24.010(4); Bain, 175 Wn.2d at 93.

before confirming that the beneficiary of the obligation holds the note and thus has authority to enforce the obligation. The act requires

> (7)(a) That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

> (b) Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.[13]

## Declarations of Lisa Mahony, Karie Mullen, and Tim Stephenson

Bavand makes two claims related to the trial court's decisions about evidence. We review these decisions de novo.[14]

First, Bavand argues that the court should not have considered the testimony of Lisa Mahony and Karie Mullen, who submitted declarations as officers of Flagstar and Chase, respectively. A business record is admissible as competent evidence

> if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.[15]

---

[13] RCW 61.24.030(7)(a), (b).
[14] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).
[15] RCW 5.45.020.

Reviewing courts interpret the statutory terms "custodian" and "other qualified witness" broadly.[16]

Mahony's and Mullen's declarations satisfy the requirements of RCW 5.45.020. Each declared under penalty of perjury that (1) she was an employee or officer of Flagstar or Chase, (2) she had personal knowledge of her employer's practice of maintaining business records, (3) she had personal knowledge from her own review of the relevant records related to Bavand's note, and (4) the attached account records were true and correct copies of documents made in the ordinary course of business at or near the time of the transactions. Bavand's contention that contradictions between the two declarations raise disputed issues of fact is without merit. Flagstar's records attached to Mahony's declaration show that Fannie Mae became the investor in April 2004, paying Flagstar on April 9, 2004, and transferring servicing rights to Chase on October 1, 2004. This is consistent with Mullen's declaration, and Mahony's statement that "in May 2004, the loan was sold to JPMorgan Chase Bank, N.A.," does not raise any material disputed fact. The trial court did not err by admitting Mahony's and Mullen's declarations.

Next, Bavand contends that the trial court erred by striking the declaration of Tim Stephenson, Bavand's proffered expert witness. We disagree.

Under ER 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,

_____

[16] State v. Quincy, 122 Wn. App. 395, 399, 95 P.3d 353 (2004).

a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." While an expert witness's testimony can embrace an ultimate issue for the trier of fact to determine, a witness may not give legal conclusions.[17] Here, Stephenson stated a number of legal conclusions about documents, case law, and statutory terms. The trial court struck Stephenson's declaration, determining that it "contains almost entirely impermissible legal conclusions, is not helpful in resolving the claims alleged in the Complaint, offers no admissible evidence refuting Chase's evidence that it holds Plaintiff's Promissory Note, and is inadmissible under ER 702." The court did not abuse its discretion.

## Deeds of Trust Act Claims

Bavand contends that Chase and the other respondents are liable for wrongful foreclosure and violations of the DTA. She points to "material defects in the deed of trust" because Joan H. Anderson "does not meet any of the criteria set forth in RCW 61.24.010."[18] And her principal contention is that "Respondents misrepresented the identity of the owner and holder of her loan in a clear attempt (conspiracy) to frustrate her efforts to contact her lender directly to modify or renegotiate her loan." Her claims fail.

---

[17] State v. Olmedo, 112 Wn. App. 525, 532-33, 49 P.3d 960 (2002); Hyatt v. Sellen Constr. Co., 40 Wn. App. 893, 898-99, 700 P.2d 1164 (1985).

[18] Under RCW 61.24.010, a trustee may be a corporation, title insurance company, attorney, agency of the United States government, or national bank, savings bank, or savings and loan.

As a threshold matter, in Frias v. Asset Foreclosure Services, Inc.,[19] our Supreme Court held that without a completed foreclosure sale, the DTA does not provide a cause of action for damages. Because no trustee's sale of Bavand's property occurred, she cannot bring claims for wrongful foreclosure or violations of the DTA.

Bavand's claims also fail on the merits. Even if Bavand showed that Anderson, as an agent of Flagstar Bank, was an unqualified trustee when named in 2004, neither Anderson nor Flagstar took any action against Bavand. By the time Chase issued a notice of default, NWTS had replaced Anderson as trustee, and Flagstar had not held the note for over six years. Bavand does not dispute that NWTS is a proper trustee. Bavand identifies no defect in the deed of trust that is material to her case.

Bavand also argues that RCW 61.24.030(7)(a) requires that "the 'holder' [of the note] must also be the 'owner' of the obligation, particularly when declaring a default in the obligation and when appointing a successor trustee." (Emphasis omitted.) But in Trujillo v. Northwest Trustee Services, Inc.,[20] we expressly rejected this argument. In Trujillo, we followed our Supreme Court in applying definitions in the Uniform Commercial Code[21] to hold that "it is the status of holder of the note that entitles the entity to enforce the obligation. Ownership

---

[19] 181 Wn.2d 412, 422-23, 334 P.3d 529 (2014).
[20] 181 Wn. App. 484, 326 P.3d 768 (2014), review granted, 182 Wn.2d 1020 (2015).
[21] Bain, 175 Wn.2d at 103-04.

of the note is not dispositive."[22]   And we noted that state common law is consistent with this conclusion.[23] Bavand fails to persuade us that our decision in Trujillo is distinguishable or "demonstrably incorrect or harmful."

Here, JPMorgan Chase Bank NA declared under penalty of perjury that it is the holder of Bavand's note. "Absent conflicting evidence, the [beneficiary] declaration should be taken as true."[24] Bavand's lengthy argument that genuine issues of material fact exist as to whether Fannie Mae owned the note is not relevant to the question of who held the note and thus had the authority to enforce the obligation. She has not raised any genuine issue of material fact.

Bavand also alleges that "NWTS failed to comply with the DTA and its fiduciary duty of good faith."[25] She argues that NWTS "engag[ed] in an unethical process of unreasonably relying upon documents it knew or should have known to be false and misleading." But Bavand does not show that the deed of trust and the endorsement by Flagstar are either false or misleading. And we find her argument that the merger of Chase Financial and JPMorgan Chase Bank created

---

[22] Trujillo, 181 Wn. App. at 498.

[23] Trujillo, 181 Wn. App. at 498-501 (citing John Davis & Co. v. Cedar Glen # Four, Inc., 75 Wn.2d 214, 450 P.2d 166 (1969); see also Lucero v. Cenlar FSB, No. C13-0602, 2015 WL 520441 (W.D. Wash. Feb. 9, 2015) (holder, party in possession of note, is entity entitled to receive payments; trustee has no independent duty to verify information in beneficiary declaration absent some notice of faulty information); accord Meyer v. U.S. Bank, N.A., No. 14-00297, 2015 WL 1619048 (W.D. Wash. Apr. 10, 2015). These cases were included in respondent's statement of additional authorities.

[24] Trujillo, 181 Wn. App. at 496.

[25] The standard Bavand articulates here—"fiduciary duty of good faith"—is unhelpful. Under RCW 61.24.010(3) and (4), trustees have a duty of good faith to all parties but no fiduciary duty or obligation.

confusion about the noteholder's identity unpersuasive. Also unconvincing are her allegations that the notice of default "deceptively and deliberately confused the 'beneficiary' with the 'note owner' and the 'note holder.'"

Bavand also contends that "the Notice of Foreclosure issued by NWTS on or about May 2, 2012 fails to comply with [the] statutory form." But this notice informed her of the date of the sale, who was enforcing the obligation, the amount needed to cure the default and whom she should contact to do so, and her right to contest the default, as required by the act. As we also noted in Trujillo, RCW 61.24.040 directs only that a notice of sale must be in "substantially" the statutory form.[26] Therefore, contrary to Bavand's assertion, a trustee does not fail to strictly comply with the terms of the DTA by not strictly following the statutory form language.

Bavand also asserts that "NWTS appears to have engaged in a practice of falsely dating mandated foreclosure documents," citing the notice of trustee's sale, which included an "effective" date of May 2, 2012, but was notarized on May 8, 2012. In support of this assertion, Bavand cites Klem v. Washington Mutual Bank.[27] But Klem is inapposite. In that case, Klem presented evidence of a practice of falsely predated notarizations that unfairly expedited foreclosures.[28] Here, the presence of an "effective" date earlier than the notarization date in one

---

[26] RCW 61.24.040(1)(f), (2).
[27] 176 Wn.2d 771, 295 P.3d 1179 (2013).
[28] Klem, 176 Wn.2d at 777-78.

document does not constitute evidence of false notarization and leads to no unfair result, as in Klem. This contention has no merit.

Consumer Protection Act Claims

Bavand also argues that the defendants violated the CPA. Although she cannot bring a claim for damages under the DTA without a foreclosure sale, she may bring a claim for similar actions under the CPA.[29] To prevail on an action for damages under the CPA, the plaintiff must establish "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."[30] "[W]hether a particular action gives rise to a Consumer Protection Act violation is reviewable as a question of law."[31]

Under our Supreme Court's Hangman Ridge[32] test, a plaintiff may base a claim under the Washington CPA upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of the public interest.[33] Bavand does not allege any per se violations but argues that several actions by Chase and the other respondents were unfair or deceptive acts or practices that violated the public interest.

---

[29] Lyons v. U.S. Bank NA, 181 Wn.2d 775, 784, 336 P.3d 1142 (2014).
[30] Hangman Ridge Training Stables Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).
[31] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).
[32] Hangman Ridge Training Stables Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).
[33] Klem, 176 Wn.2d at 787.

Bavand argues that "the improper assignment and appointment of NWTS, among other violations of the DTA alleged herein, constitute unfair and deceptive acts or practices." But Chase possessed the note, which Flagstar had endorsed in blank, and was thus a proper beneficiary under the DTA. Therefore, Chase had authority to appoint NWTS as successor trustee. It was not deceptive to refer to Chase as the beneficiary on the notice of default and notice of trustee's sale. Although the reference to Chase as "owner" of the note is arguably ambiguous, Bavand presents no evidence that it was deceptive as to whom she owed the obligation. And contrary to Bavand's assertion that "Respondents have deceived and prevented her from meaningfully pursuing her options under the federal Home Affordable Modification Program (HAMP)," the record shows that Chase sent at least a dozen letters informing Bavand that she could pursue foreclosure assistance through HAMP,[34] along with other letters describing different options for assistance. Any inability on Bavand's part to "meaningfully pursu[e] her options" was not because of any lack of reasonable notice or opportunity to seek foreclosure assistance.

The record also contradicts Bavand's assertion that she did not learn of Fannie Mae's involvement until 2014, given that a year and a half earlier, she stated in her complaint that she learned in 2012 that Fannie Mae owned her loan. In summary, extensive correspondence between Bavand and Chase from at

---

[34] Most of these letters were sent both to an address of record for Bavand and to the subject property's address.

least 2010 to 2012 demonstrates that Bavand knew who held her note, who was enforcing the obligation, and to whom she could apply for assistance. And while she observes correctly that "a homeowner might have a CPA claim against MERS if MERS acts as an ineligible beneficiary," our Supreme Court has held that "the mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury."[35] The notice of trustee's sale states that Chase, not MERS, is the beneficiary enforcing the obligation. Because Bavand does not show any deceptive MERS act, this claim also fails. The trial court did not err by granting summary judgment on Bavand's CPA claims.

Criminal Profiteering Act Claims

Finally, Bavand contends that the trial court improperly granted summary judgment dismissing her claims under RCW 9A.82, the Criminal Profiteering Act. This act provides a civil cause of action to a person if injured in his or her "person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity, or by an offense defined in [several criminal statutes]."[36]

Here, the record does not support any claim for criminal profiteering. The respondents' actions related to Bavand's loan consist of servicing the loan and sending numerous notices about the foreclosure following Bavand's undisputed default. The trial court did not err by granting summary judgment on this claim.

---

[35] Bain, 175 Wn.2d at 120.
[36] RCW 9A.82.100(1)(a).

Request for CR 56(f) Continuance

Finally, Bavand claims that the trial court erred by denying her request to continue discovery under CR 56(f). Under this rule,

> [s]hould it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A party seeking a continuance must provide an affidavit stating what evidence it seeks and how this evidence will raise an issue of material fact precluding summary judgment.[37] We review a trial court's denial of a CR 56(f) motion for abuse of discretion.[38]

A trial court may deny a motion for continuance when:

> (1) the requesting party does not have a good reason for the delay in obtaining the evidence, (2) the requesting party does not indicate what evidence would be established by further discovery, or (3) the new evidence would not raise a genuine issue of fact.[39]

Here, Bavand filed no motion or affidavit, simply making the request at the conclusion of her response to the defendants' motions for summary judgment. More importantly, she provided no good reason for delay. She cited as a basis for her request "particularly the recently disclosed involvement of Fannie Mae

---

[37] Durand v. HIMC Corp., 151 Wn. App. 818, 828, 214 P.3d 189 (2009).
[38] Qwest Corp. v. City of Bellevue, 161 Wn.2d 353, 369, 166 P.3d 667 (2007).
[39] Qwest, 161 Wn.2d at 369 (quoting Butler v. Joy, 116 Wn. App. 291, 299, 65 P.3d 671 (2003)).

and the Trust." But she discovered Fannie Mae's ownership in 2012—not exactly "recently." Bavand presents no evidence raising a genuine issue of material fact that would justify a continuance. The trial court did not abuse its discretion by denying her request.

Attorney Fees

Chase requests an award of attorney fees and costs on appeal under the terms of the note and deed of trust and as provided under RAP 18.1. RCW 4.84.330 permits a party to recover reasonable attorney fees and costs in any action on a contract where the contract provides for this award. The promissory note Bavand signed provides, "[T]he Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." The deed of trust provides, "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument," including fees incurred on appeal.

The trial court granted Chase's motion for fees and costs below. We grant Chase's request for attorney fees and costs on appeal upon its compliance with RAP 18.1.

## Conclusion

Because the trial court did not abuse its discretion in its evidentiary rulings or err in granting the defendants' motions for summary judgment, we affirm.

Leach, J.

WE CONCUR:

Becker, J.