# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| C & R ELECTRIC, INC., | ) | No. 73464-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| T.R.J. DEVELOPMENT, INC., | ) | |
| TERENCE RAYMOND JOHNSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 20, 2017 |

VERELLEN, C.J. — Terence Johnson appeals the grant of summary judgment in favor of C & R Electric, Inc. for breach of contract and lien foreclosure. Johnson contends that there are genuine issues of material fact and that the trial court abused its discretion in granting attorney fees. Because there is no dispute of material fact whether Johnson entered into a time and materials contract with C & R, we affirm. Johnson failed to preserve his challenge to attorney fees and may not raise his objection for the first time on appeal.

## FACTS

Terence Johnson owns commercial real property located at 21104 International Boulevard in SeaTac. C & R, a licensed and bonded electrical contracting company, performed work on Johnson's property related to electrical power for a paint booth and other unrelated electrical repairs. When Johnson failed to pay for the work, C & R

recorded a mechanics' lien against the property. Thereafter, C & R filed a lawsuit against Johnson seeking a monetary judgment based on breach of contract. C & R also sought to foreclose the lien.

The trial court granted C & R's motion for summary judgment on its breach of contract claim and entered judgment against Johnson for $7,506.30, the principal amount of the work completed, plus $1,506.70 in interest. The court also awarded C & R a lien against the property in the amount of $3,626.01 for the electrical repairs unrelated to the paint booth project. The court did not award a lien for the work related to the paint booth because it found an issue of fact existed whether the work constituted an improvement to real property. The court awarded C & R $20,000 in attorney fees and $1,883.84 in costs.

Johnson appeals.

## ANALYSIS

### Motion for Summary Judgment

Johnson argues the trial court erred in granting summary judgment because there are genuine issues of material fact whether he entered into a contract with C & R. We disagree.

When reviewing a grant of summary judgment, an appellate court undertakes the same inquiry as the trial court.[1] We consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.[2] Summary judgment is appropriate "'if

---

[1] Beaupre v. Pierce County, 161 Wn.2d 568, 571, 166 P.3d 712 (2007).

[2] Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

2

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] "A genuine issue of material fact exists if reasonable minds could differ about the facts controlling the outcome of the lawsuit."[4]

The moving party can satisfy its initial burden under CR 56 by demonstrating that it is entitled to a judgment as a matter of law.[5] Once there has been an initial showing of the absence of any genuine issue of material fact, the party opposing summary judgment must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues.[6] "An adverse party may not rest upon mere allegations or denials"[7] but must instead set forth "'specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.'"[8]

In support of its motion for summary judgment, C & R submitted a declaration from C & R president Marc Gartin. The Gartin declaration explains that in April 2013,

---

[3] CR 56(c); White v. State, 131 Wn.2d 1, 9, 929 P.2d 396 (1997) (quoting Marincovich v. Tarabochia, 114 Wn.2d 1271, 274, 787 P.2d 562 (1990)).

[4] Barkley v. Greenpoint Mortg. Funding, Inc., 190 Wn. App. 58, 65, 358 P.3d 1204 (2015), review denied, 184 Wn.2d 1036 (2016).

[5] Young v. Key Pharms., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989).

[6] Rucker v. Novastar Mortg., Inc., 177 Wn. App. 1, 10, 311 P.3d 31 (2013) (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

[7] McBride v. Walla Walla County, 95 Wn. App. 33, 36, 975 P.2d 1029 (1999); CR 56(e).

[8] Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (quoting Meyer v. Univ. of Wash., 105 Wn.2d 847, 852, 719 P.2d 98 (1986)).

Johnson unexpectedly appeared at C & R's office. Gartin met with Johnson, who frantically explained that he needed an electrician to complete work on a freestanding paint booth at the property because the City of Seattle had "red-tagged" it for having no electrical permit.

Gartin explained that C & R could obtain an electrical permit for Johnson and perform the work on a "time and materials" basis, meaning it would "charge all the time for electricians on an hourly basis, as well as all materials used on the project."[9] Gartin informed Johnson that the work "would not be cheap," because Gartin personally knew the SeaTac electrical inspector, who would "demand absolute strict compliance for any electrical contractor performing work on the paint booth project."[10] According to Gartin, Johnson agreed to the "terms while he sat in my office."[11]

After the meeting, C & R sent one of its electricians to the property to meet with the city electrical inspector "and ascertain specifically all the work and materials required to perform the job."[12] Per Johnson's request, C & R also had a representative present for each inspection made by the city. C & R completed the work on the paint booth and successfully obtained an electrical permit and final approval by the city electrical inspector.

During the course of C & R's work on the paint booth, Johnson's property was vandalized. Someone apparently stole copper wire, resulting in severe damage to the

---

[9] Clerk's Papers (CP) at 176.

[10] CP at 176-77.

[11] CP at 177.

[12] CP at 177.

4

property's entire electrical service. Johnson asked C & R to replace the stolen copper wire and perform other necessary electrical repairs. C & R agreed and then completed the work requested. C & R sent four invoices to Johnson, totaling $7,506.30. Three of the invoices were for the work performed on the paint booth and totaled $3,880.29. Gartin expressly stated the fourth invoice "is related only to the work" for the electrical repairs in the amount of $3,626.01.[13]

C & R therefore satisfied its initial burden under CR 56 of demonstrating that it was entitled to judgment as a matter of law.

Johnson submitted two declarations opposing summary judgment: one from himself and the other from Antonio Miranda, a tenant who leased a portion of the property to operate his company T&C Auto. The Johnson declaration is narrowly crafted. It makes no mention of the April 2013 meeting and only vaguely refers to the electrician who came to the property to determine the scope of the work:

> C&R came to the site and met with Antonio and me and looked at the scope of the work[.] Contrary to Marc Gartin's Declaration that C&R believed and at some point apprised me that this would be a major project, they understood they were basically reviewing my work done to power T&C's paint booth. C&R must have seen the work as a casual, minor job since *Mr. Gartin never presented or discussed any terms of an agreement or prices for labor and materials.* . . .
>
> . . . As I stated, there had never been any discussion of price, hourly rates, value of work, or other terms of agreement and *there was no agreement*, verbal or written, *between C&R and either TRJ[14] or T&C.*[15]

---

[13] CP at 178.

[14] Johnson owned TRJ Development, Inc. before it dissolved in 2014.

[15] CP at 91-92 (emphasis added).

Johnson's vague statements of no discussion of price, hourly rates, value of work, or other terms of agreement are not adequate cause to create a question of fact. Johnson does not deny the April 2013 meeting with Gartin, or that he *himself* reached an agreement with C & R to obtain the electrical permit and perform the work on a time and materials basis. Rather, he denies there was a specific agreement as to the hourly rate for the labor and the specific costs of materials. But "[o]ne common type of contract between owners and general contractors is called a time and materials contract. This contract provides for a contract price based on the actual cost of both the labor and the materials."[16] Such a contract for time and materials is an adequate contract.[17] C & R could properly later calculate the reasonable cost of the labor and the materials.

Likewise, Miranda's declaration did not deny the occurrence of the April 2013 meeting:

> C&R became involved in finishing up the work and inspections of the booth . . . because the electrical inspector had changed and [Johnson] was unable to get the needed electrical permit . . . to complete the booth installation work. It became clear that even though there was a right to such a permit, it would "go much faster" according to the SeaTac City

---

[16] 33 MATTHEW KING, WASHINGTON PRACTICE: CONSTRUCTION LAW MANUAL § 9:1, at 164 (2008) (footnote omitted).

[17] See 17A AM. JUR. 2D Contracts § 477 (2016) ("Where a contract makes no statement as to the price to be paid, the law invokes the standard of reasonableness, and the fair value of the services or property is recoverable."). See also 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 4.4, at 581 (rev. ed. 1993) ("An agreement is not unenforceable for lack of definiteness of price or amount if the parties specify a practicable method by which the amount can be determined by the court without any new expression by the parties themselves.); id. at 586 ("[T]he fact that one of the parties reserves the power of fixing or varying the price or other performance is not fatal if the exercise of this power is subject to prescribed or implied limitations, as that the variation must be in proportion to some objectively determined base or must be reasonable or in good faith.").

6

Attorney if an electrical contractor were used to inspect and to make sure the work already done was adequate and to perform a few remaining items. C&R Electric was the contractor used and, in a brief meeting on site, they were shown such work as needed to be done. I was present at the meeting. . . .

The work on the booth was very minor [in] scope and amount of work. . . . No contract, verbal or written, nor prices for time and materials were ever discussed. There was just a general agreement that C&R would oversee the minor amount of work that remained to be done. C&R never gave me an owner's notice or contract, discussed price terms with me, or gave me an estimate of the cost of its work.[18]

Although Miranda "felt sure that everyone involved knew they were doing this work to benefit me, as the building's tenant,"[19] there is nothing in either declaration opposing summary judgment to indicate C & R was ever told that Miranda was solely responsible for paying for the work.

Both the Johnson and Miranda declarations failed to set forth any specific facts to sufficiently rebut C & R's contention that Johnson entered into a time and materials agreement in April 2013.

Johnson also argues the trial court erred in granting C & R summary judgment because material issues of fact exist "regarding the amount owing for the copper wire repair."[20] But in Gartin's declaration, he explained:

Throughout the course of the work by C&R at the Property, it provided four invoices to Terry Johnson totaling $7,506.30. It is noteworthy that the first of the four invoices (i.e., Invoice No. 28502), outlining the hourly charges for a journeyman electrician as well as costs of certain materials, was sent on April 26, 2013 (i.e., soon after C&R started the work). After receiving the invoice, Terry Johnson did not mention any problem, allowed the work to proceed and as mentioned

---

[18] CP at 65-66.

[19] CP at 64.

[20] Appellant's Br. at 12.

above, even asked C&R to repair the electrical service which was damaged during the alleged burglary. . . . *It should also be mentioned that one of the four invoices (Invoice No. 28607), is related only to the work for the above described electric service repair for the entire Property and not the paint booth project.*[21]

Johnson speculates that some items listed in the fourth invoice (Invoice 28607) were related to the paint booth, but failed to rebut Gartin's express statement to the contrary.

Therefore, the trial court correctly granted summary judgment in favor of C & R for breach of contract and lien foreclosure.

### Attorney Fees and Costs

Johnson challenges the trial court's award of attorney fees and costs to C & R. He argues C & R did not provide the trial court with adequate information to perform the required lodestar calculation. He also argues the trial court failed to enter any findings of fact to support the award and failed to segregate the attorney fees between non-lien and lien claim fees. But none of these objections were raised before the trial court.

In C & R's motion for summary judgment, it sought attorney fees and costs. C & R attorney Stephan Wakefield submitted a supporting declaration that included his and his paralegal's hourly rates, a general discussion of the extensive work involved (including Johnson's chapter 13 bankruptcy), and his statement that $20,000 in total fees had been incurred. Johnson did not object to the hourly rates, lack of detailed itemization, or lack of segregation between non-lien and lien claim fees. He raised no objections in his opposition to summary judgment or during the hearing on the summary judgment motion.

---

21 CP at 178 (emphasis added).

In moving for reconsideration, Johnson's only objection was to "delete any mention of attorney fees at this time, as there was no mention of them in the court[']s oral ruling."[22] In Johnson's declaration supporting reconsideration, he reiterated that the written order did not reflect the court's oral ruling: "As the court's oral ruling was silent regarding attorney's fees, the order should state the issue of fees is reserved for trial, pending possible settlement, or an agreement to arbitrate."[23]

Generally, this court will not consider issues not presented to the trial court.[24] Specifically, objections related to attorney fees should not be raised for the first time on appeal.[25] Even on reconsideration, Johnson's only suggestion was that an award of fees was premature, an issue he has not raised on appeal. In the absence of any objection or argument in the trial court on the grounds raised for the first time on appeal regarding attorney fees, Johnson has failed to preserve his challenges to the amount of attorney fees or segregation of fees. Therefore, those issues are not properly before us.[26]

---

[22] CP at 144.

[23] CP at 150.

[24] Washburn v. Beatt Equip. Co., 120 Wn.2d 246, 290, 840 P.2d 860 (1992).

[25] King County v. Guardian Cas. & Guar. Co., 103 Wash. 509, 514-15, 175 P. 166 (1918) (question regarding authority for fees should not be considered for the first time on appeal); Bierce v. Grubbs, 84 Wn. App. 640, 645, 929 P.2d 1142 (1997) (fee issue could not be raised for first time on appeal); Draper Mach. Works, Inc. v. Hagberg, 34 Wn. App. 483, 488, 663 P.2d 141 (1983) (challenge to amount of fees could not be raised for first time on appeal).

[26] See RAP 2.5(a).

*Appellate Fees*

C & R requests an award of attorney fees on appeal. Under the lien foreclosure statute, the court "may allow the prevailing party in the action . . . as part of the costs of the action, . . . attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court . . . deems reasonable."[27] Accordingly, C & R is entitled to reasonable attorney fees and costs on appeal related to the lien foreclosure and subject to compliance with RAP 18.1(d).

Affirmed.

WE CONCUR:

---

[27] RCW 60.04.181.