2015 AUG 10 AM 9: 51


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ALEX C. BARKLEY,

        Appellant,

    v.

GREENPOINT MORTGAGE
FUNDING, INC., a New York
corporation; and DOE
DEFENDANTS 1-10,

        Defendants,

U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE, SUCCESSOR
TRUSTEE IN INTEREST TO STATE
STREET BANK AND TRUST AS
TRUSTEE FOR WASHINGTON
MUTUAL MSC MORTGAGE PASS-
THROUGH CERTIFICATES SERIES
2003-ARI, a nationally chartered bank;
JPMORGAN CHASE BANK NATIONAL
ASSOCIATION, a nationally chartered
bank; NORTHWEST TRUSTEE
SERVICES, INC., a Washington
corporation; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., a Delaware
corporation,

        Respondents.

No. 72051-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 10, 2015

LEACH, J. — After Alex Barkley's lender initiated nonjudicial foreclosure

proceedings following Barkley's default on his mortgage loan, Barkley filed suit.

No. 72051-1-I / 2

He appeals the summary judgment dismissal of his complaint for injunctive relief and damages against U.S. Bank NA, JPMorgan Chase Bank NA, Northwest Trustee Services Inc. (NWTS), and Mortgage Electronic Registration Systems Inc. (MERS). He claims that genuine issues of material fact exist as to the respondents' alleged violations of the deeds of trust act (DTA or act), chapter 61.24 RCW, the Consumer Protection Act (CPA), chapter 19.86 RCW, and the Criminal Profiteering Act, chapter 9A.82 RCW. He challenges certain trial court evidence rulings and its denial of his request for a continuance of the summary judgment hearing. We conclude that the trial court did not err in its evidentiary decisions or in denying Barkley's request for a continuance. And because no trustee's sale of Barkley's property occurred and Barkley identifies no genuine issue of material fact related to any deceptive, unfair, or criminal act by the respondents, summary dismissal of his claims was proper. We affirm.

FACTS

In November 2002, real estate agent and investor Alex Barkley borrowed $291,900 from GreenPoint Mortgage Funding Inc. to refinance real property in Seattle, executing an adjustable rate note and a companion deed of trust. The deed was recorded in King County on November 26, 2002. It lists GreenPoint as lender, Transnational Title Insurance Co. as trustee, and MERS, "a separate corporation that is acting solely as a nominee for Lender and Lender's

-2-

successors and assigns," as beneficiary. GreenPoint endorsed the note in blank. In a January 2003 pooling services agreement, U.S. Bank acquired the note.[1] Chase, to whom Barkley made all his mortgage payments from 2002 to 2010, serviced the loan.

In 2010, Barkley's income as a real estate agent dropped significantly. In August 2010, he defaulted on his loan. Also in August, he began renting the property, receiving roughly $20,000 in short-term vacation rental fees between August and December 2010.[2]

Barkley contacted Chase about the "possibility of a modification" but did not complete an application to modify his loan. In January 2011, Northwest Trustee Services Inc., acting as U.S. Bank's agent, sent Barkley a notice of default. This notice identified U.S. Bank as beneficiary of the deed of trust and Chase as loan servicer. The notice included contact information for U.S. Bank, Chase, and NWTS. In July 2011, U.S. Bank executed a limited power of attorney, authorizing Chase to execute and deliver all documents and instruments necessary to conduct any foreclosure.

On September 18, 2012, MERS, "as nominee for GreenPoint Mortgage Funding, Inc.," executed an assignment of deed of trust, transferring its beneficial

---

[1] The trust, for which U.S. Bank is trustee, "shall have all of the rights and remedies of a secured party and creditor under the Uniform Commercial Code."

[2] His monthly mortgage payment, by comparison, was approximately $1,400.

interest in Barkley's deed to U.S. Bank.[3] On October 18, 2012, U.S. Bank, by "JPMorgan Chase Bank, NA, its Attorney in Fact," executed a beneficiary declaration, stating that U.S. Bank was "the holder of the promissory note or other obligation evidencing" Barkley's loan.

On November 7, 2012, U.S. Bank, by its attorney-in-fact, Chase, appointed NWTS as successor trustee. On December 13, 2012, NWTS recorded a notice of trustee's sale, scheduling the sale for March 15, 2013. The notice identified U.S. Bank as the beneficiary of the deed of trust, and the attached notice of foreclosure explained that it was "a consequence of default(s) in the obligation to the U.S. Bank National Association." The notice of foreclosure informed Barkley that he had until 11 days before the sale to cure the default, which totaled more than $54,000 in arrearages and fees. The notices informed Barkley of his right to contest the default and the procedures to do so and gave contact information for NWTS.

On March 4, 2013, Barkley's counsel sent a letter requesting NWTS's "cooperation" in postponing the sale to allow Barkley sufficient time "to make a determination of whether it is appropriate to move forward with a lawsuit and motion to restrain the sale." NWTS first agreed to postpone the sale one week, postponing it twice more before canceling it.

---

[3] This assignment was recorded in King County on November 26, 2012.

On May 22, 2013, Barkley filed suit against GreenPoint, U.S. Bank, Chase, NWTS, and MERS, alleging wrongful foreclosure, violations of the DTA, the CPA, and the Criminal Profiteering Act. Barkley has continued to rent out the property, receiving short-term vacation rental fees of $6,400 a month, on average.

In January and February 2014, the defendants filed motions to compel discovery, which the trial court granted, also awarding the defendants $1,068 in costs and reasonable attorney fees. In April 2014, the defendants moved for summary judgment. In his responding brief, Barkley requested a continuance to obtain additional discovery.

On May 23, 2014, the trial court granted the defendants' motions for summary judgment. Following a stipulation by the parties,[4] the court also granted a motion for voluntary nonsuit, dismissing GreenPoint and all Doe defendants without prejudice.

Barkley appeals.

### STANDARD OF REVIEW

We review de novo a trial court's order granting summary judgment.[5] We use the de novo standard to review all trial court rulings made in conjunction with

---

[4] CR 41(a)(1)(A).
[5] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003).

No. 72051-1-I / 6

a summary judgment decision.[6] Summary judgment is appropriate if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law.[7] A genuine issue of material fact exists if reasonable minds could differ about the facts controlling the outcome of the lawsuit.[8]

A defendant may move for summary judgment by demonstrating an absence of evidence to support the plaintiff's case.[9] If the defendant makes this showing, the burden shifts to the plaintiff to establish the existence of an element essential to his or her case.[10] If the plaintiff fails to meet his or her burden as a matter of law, summary judgment for the defendant is proper.[11]

ANALYSIS

Deeds of Trust Act

The DTA creates a three-party transaction, in which a borrower conveys the mortgaged property to a trustee, who holds the property in trust for the lender

---

[6] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

[7] Michak, 148 Wn.2d at 794-95.

[8] Hulbert v. Port of Everett, 159 Wn. App. 389, 398, 245 P.3d 779 (2011).

[9] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Sligar v. Odell, 156 Wn. App. 720, 725, 233 P.3d 914 (2010)), review denied, 181 Wn.2d 1023 (2014).

[10] Knight, 181 Wn. App. at 795 (citing Sligar, 156 Wn. App. at 725).

[11] Knight, 181 Wn. App. at 795-96.

as security for the borrower's loan.[12] If a borrower defaults, a lender may nonjudicially foreclose by a trustee's sale.[13] The act furthers three goals: (1) an efficient and inexpensive foreclosure process, (2) adequate opportunity for interested parties to prevent wrongful foreclosure, and (3) stability of land titles.[14] Because the DTA eliminates many of the protections afforded borrowers under judicial foreclosures, "lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor."[15] A trustee has a duty of good faith to all parties and "is not merely an agent for the lender or the lender's successors."[16]

The DTA describes the steps a trustee must take to start a nonjudicial foreclosure. Among other requirements, before scheduling a sale, a trustee must confirm that the beneficiary of the deed of trust holds the note and thus has authority to enforce the obligation. The act requires

> (7)(a) That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note

---

[12] Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012); Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012).

[13] Bain, 175 Wn.2d at 93; Albice, 174 Wn.2d at 567.

[14] Albice, 174 Wn.2d at 567 (citing Cox v. Helenius, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)).

[15] Albice, 174 Wn.2d at 567 (citing Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-16, 154 P.3d 882 (2007); Koegel v. Prudential Mut. Sav. Bank, 51 Wn. App. 108, 111-12, 752 P.2d 385 (1988)).

[16] RCW 61.24.010(4); Bain, 175 Wn.2d at 93.

or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

(b) Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.[17]

## Declarations of John Simionidis and Jeff Stenman

First, Barkley contends that the court should not have considered the declarations of John Simionidis, assistant secretary for Chase, and Jeff Stenman, vice-president and director of operations for NWTS. To be considered on summary judgement, CR 56(e) requires a declaration be made on personal knowledge and describe facts admissible in evidence:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Statements in a declaration based on a review of business records satisfy the personal knowledge requirement of CR 56(e) if the declaration satisfies the business records statute, RCW 5.45.020.[18] A business record is admissible as competent evidence

---

[17] RCW 61.24.030.
[18] Discover Bank v. Bridges, 154 Wn. App. 722, 726, 226 P.3d 191 (2010).

> if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.[19]

Reviewing courts interpret the statutory terms "custodian" and "other qualified witness" broadly.[20]

Both declarations satisfy the requirements of CR 56(e) and RCW 5.45.020. Simionidis and Stenman declared under penalty of perjury that (1) they were officers of Chase and NWTS, respectively; (2) they had personal knowledge of their company's practice of maintaining business records; (3) they had personal knowledge from their own review of records related to Barkley's note and deed of trust; and (4) the attached records were true and correct copies of documents made in the ordinary course of business at or near the time of the transaction. Though Barkley asserts that the testimony is "conclusory" and does not demonstrate personal knowledge, he does not identify any genuine issue of material fact as to the qualifications of Stenman and Simionidis, their statements, or the authenticity of the attached documents. The trial court did not err by considering the declarations and attached business records.

---

[19] RCW 5.45.020.
[20] State v. Quincy, 122 Wn. App. 395, 399, 95 P.3d 353 (2004).

Deeds of Trust Act Claims

Barkley makes a number of claims alleging violations of the DTA. The DTA does not create an independent cause of action for monetary damages based on alleged violations of its provisions when, as here, no foreclosure sale has occurred.[21]

Consumer Protection Act Claims

Next, Barkley alleges claims under the CPA, including "reduced rental, damage to his credit and emotional distress." Although he cannot bring a claim for damages under the DTA without a foreclosure sale, he may bring claims for violating this act under the CPA.[22] To prevail on an action for damages under the CPA, the plaintiff must establish "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."[23] "[W]hether a particular action gives rise to a Consumer Protection Act violation is reviewable as a question of law."[24]

---

[21] Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 417, 334 P.3d 529 (2014).

[22] Lyons v. U.S. Bank NA, 181 Wn.2d 775, 784, 336 P.3d 1142 (2014).

[23] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[24] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

Under our Supreme Court's Hangman Ridge[25] test, a plaintiff may base a claim under the Washington CPA upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of the public interest.[26]

Barkley does not allege any per se violations, and his allegations of unfair or deceptive acts are somewhat vague. He makes general statements such as, "The Bain court specifically held that a homeowner might have a CPA claim against MERS if MERS acts as an ineligible beneficiary" and "the improper appointment of NWTS, among other violations of the DTA alleged herein, can constitute unfair and deceptive acts or practices." These general statements do not prove, nor does the record support, any claim for unfair or deceptive practices here.

The mere fact that the deed of trust identified MERS as beneficiary will not support a claim.[27] U.S. Bank, through its agent, Chase, was the holder of the note, which GreenPoint had endorsed in blank. Therefore, U.S. Bank had the authority to appoint NWTS as successor trustee. It was not deceptive to refer to U.S. Bank as the beneficiary on the notice of default and notice of trustee's sale

---

[25] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).
[26] Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013).
[27] Bain, 175 Wn.2d at 120.

and foreclosure. NWTS sent the notices the CPA requires, and Barkley does not show that these notices were unfair or deceptive so as to support a claim under the CPA.

Criminal Profiteering Act Claims

Next, Barkley argues that the trial court improperly dismissed his claims under chapter 9A.82 RCW, the Criminal Profiteering Act. This act provides a civil cause of action to a person if injured in his or her "person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity, or by an offense defined in [several criminal statutes]."[28]

Here, the record does not support any claim for criminal profiteering. The respondents' actions related to Barkley's loan consist of servicing the loan and sending lawfully issued notices about the foreclosure following Barkley's undisputed default. We find the case Barkley cites in support, Bowcutt v. Delta North Star Corp.,[29] distinguishable on its facts and not supportive of Barkley's assertions. Bowcutt involved a criminal conspiracy between "a convicted felon and bankrupt to whom no reputable lender would advance funds" and an unscrupulous private lender. This complicated scheme exploited vulnerable homeowners, who were left with nothing following unlawful foreclosures.[30] Here,

---

[28] RCW 9A.82.100(1)(a).
[29] 95 Wn. App. 311, 976 P.2d 643 (1999).
[30] Bowcutt, 95 Wn. App. at 315.

by contrast, Barkley is an experienced real estate agent and investor who has avoided foreclosure through litigation and continued to profit from renting the property while making no mortgage payments. And he raises no genuine issue of material fact as to the lawfulness of the foreclosure of his loan. The trial court did not err by granting summary judgment on this claim.

In its oral ruling, after opining that "it would be reversible error for this Court not to grant summary judgment to the defendants in this case," the trial court observed,

> It is not enough to simply raise arguments and ask questions. And the Court finds that that is pretty much all that was done in this case on the plaintiff's part to try to—try to convince the Court that there is a genuine issue of material fact. In the Court's view there is not.

"[B]are assertions that a genuine material [factual] issue exists will not defeat a summary judgment motion in the absence of actual evidence."[31] We affirm the trial court's summary dismissal of Barkley's claims.

Request for CR 56(f) Continuance

Finally, Barkley claims that the trial court erred by denying his request to continue discovery under CR 56(f). Under this rule,

> [s]hould it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit

---

[31] Trimble v. Wash. State Univ., 140 Wn.2d 88, 93, 993 P.2d 259 (2000).

affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A party seeking a continuance must provide an affidavit stating what evidence it seeks and how this evidence will raise an issue of material fact precluding summary judgment.[32] We review a trial court's denial of a CR 56(f) motion for abuse of discretion.[33]

> A trial court may deny a motion for a continuance when:
>
> "(1) the requesting party does not have a good reason for the delay in obtaining the evidence, (2) the requesting party does not indicate what evidence would be established by further discovery, or (3) the new evidence would not raise a genuine issue of fact."[34]

Here, Barkley filed no motion or affidavit, simply making the request at the conclusion of his response to the defendants' motions for summary judgment. More importantly, he articulated no good reason for delay. As the basis for his request, he cited "the clear need for additional discovery to flesh out the ownership of the subject Note and Deed of Trust and the agency relationships, if any, among the Defendants, and learn the identity of the 'undisclosed investor.'" But over the course of a year of litigation, Barkley conducted extensive discovery while resisting the respondents' discovery requests, until the court compelled him

---

[32] Durand v. HIMC Corp., 151 Wn. App. 818, 828, 214 P.3d 189 (2009).
[33] Qwest Corp. v. City of Bellevue, 161 Wn.2d 353, 369, 166 P.3d 667 (2007).
[34] Qwest, 161 Wn.2d at 369 (quoting Butler v. Joy, 116 Wn. App. 291, 299, 65 P.3d 671 (2003)).

to comply. And under <u>Trujillo v. Northwest Trustee Services, Inc.</u>,[35] the ownership of the note is not relevant to the authority of the holder, U.S. Bank, to foreclose. Barkley presents no evidence raising a genuine issue of material fact that would justify a continuance. The trial court did not abuse its discretion by denying his request.

<u>Motion to Strike</u>

NWTS filed with this court a motion to strike portions of Barkley's brief, arguing that Barkley impermissibly raised new theories for the first time in his response to the respondents' summary judgment motions.[36] These theories are related to Barkley's allegations that NWTS had a conflict of interest as U.S. Bank's agent and that the notice of foreclosure failed to comply with RCW 61.24.040(2).

We deny the motion to strike. Barkley's complaint alleged that NWTS had a conflict of interest. And although Barkley made no specific contentions about RCW 61.24.040(2) in his complaint, he alleged "violation of RCW 61.24, et seq." While NWTS is correct that "a complaint generally cannot be amended through

---

[35] 181 Wn. App. 484, 498, 326 P.3d 768 (2014), <u>review granted</u>, 182 Wn.2d 1020 (2015).

[36] Motion to Strike Portions of Appellant's Opening Brief at 3 (moving to strike portions of pages 10-11 ("In conjunction" through "Notice of Foreclosure"), 34-35 ("First" through "resolve the dispute"), 37 ("Finally" through "good faith to Mr. Barkley").

arguments in a response brief to a motion for summary judgment,"[37] Barkley raised both arguments, albeit in a general way, before summary judgment.

Attorney Fees

Barkley requests his costs and reasonable attorney fees under RAP 18.1 and paragraph 26 of his deed of trust. Because he has not prevailed, Barkley is not entitled to recover his costs and fees.

NWTS requests its costs on appeal under RAP 14.2: "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." NWTS prevails here. We grant NWTS's request upon its timely filing and serving of a cost bill under RAP 14.4.

CONCLUSION

Because the trial court did not err in its evidentiary rulings, in denying Barkley's request for a continuance, or in granting the defendants' motions for summary judgment, we affirm. We deny NWTS's motion to strike and Barkley's

---

[37] Camp Finance, LLC v. Brazington, 133 Wn. App. 156, 162, 135 P.3d 946 (2006).

request for costs and attorney fees. We grant NWTS's request for costs on appeal upon its timely compliance with RAP 14.4.

_Leach, J._

WE CONCUR:

_____

_Becker, J._