# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DARLA J. PARDO, a single woman,<br><br>Appellant,<br><br>v.<br><br>NORTHWEST TRUSTEE SERVICES, a Washington corporation; RCO LEGAL, P.S., a Washington Professional Services Organization; OCWEN LOAN SERVICING LLC, a limited liability company,<br><br>Respondents,<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a foreign corporation; MERSCORP HOLDINGS, INC., a foreign corporation,<br><br>Defendants,<br><br>and<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, a United States Government Sponsored Enterprise,<br><br>Respondent. | No. 76622-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>FILED: July 30, 2018 |

TRICKEY, J. — Darla Pardo took out a loan (the Loan) to purchase her home. She signed a promissory note (the Note) secured by a deed of trust. Federal National Mortgage Association (Fannie Mae) was the holder of the Note. Ally Bank (Ally) was the document custodian. Ocwen Loan Servicing, LLC (Ocwen) serviced

the loan on behalf of Fannie Mae.

After Pardo failed to make her mortgage payments, Ocwen referred the Loan for foreclosure and appointed Northwest Trustee Services (NWTS) as the successor trustee. NWTS sold the home at a trustee's sale, and Pardo sued.

Pardo alleged that the sale was improper and violated multiple statutes, including the deeds of trust act (DTA), chapter 61.24 RCW; the Consumer Protection Act (CPA), chapter 19.86 RCW; and the Consumer Loan Act (CLA), chapter 31.04 RCW. The trial court ultimately dismissed Pardo's claims on summary judgment. We conclude that Ocwen had constructive possession of the Note and therefore affirm.

## FACTS

In January 2008, Pardo executed the Note, secured by a deed of trust on her home. Land Home Financial Services (LHFS) was the lender on the Note. The deed of trust listed Pardo as the grantor, Mortgage Electronic Registration Systems, Inc. (MERS) as the grantee and beneficiary, LHFS as the lender, and Fidelity National Title as the trustee. Fannie Mae purchased the Loan in March 2008 and became the owner, holder, and beneficiary of the Note. At that time, Ally took possession of the Note as document custodian and maintained the Note in its secure vault in Waterloo, Iowa. The Note was indorsed in blank.

GMAC Mortgage, LLC (GMAC) serviced the loan on behalf of Fannie Mae. In October 2012, GMAC sent Pardo a notice of default because she had not made her September and October mortgage payments. GMAC provided several

payment options to Pardo so that she could avoid foreclosure on the home. Pardo failed to make any subsequent payments on the Loan.

In November 2012, Ocwen acquired the rights to service the Loan through an asset purchase and became the Loan servicer in February 2013. Ocwen serviced the loan under the terms of the 2012 Fannie Mae Single Family Servicing Guide (the Guide), which governed the contractual relationship between Fannie Mae and its loan servicers. The Guide specified that "Fannie Mae at all times has possession of and is the holder of the mortgage note, except in the limited circumstances expressly described below."[1]

Ocwen also entered a Custodial Agreement with Ally in February 2013. The Custodial Agreement established Ally as the "custodian and bailee" for Ocwen and outlined Ally's duties.[2] The Custodial Agreement specifically incorporated the Guide and required Ally to perform services for Ocwen in compliance with the Guide. Ally agreed to perform these duties in exchange for payment from Ocwen. Ocwen had the right to inspect or request transfer of its files from Ally and terminate the Custodial Agreement as needed.

In March 2013, Ocwen notified Pardo of the possibility of foreclosure proceedings on her home because of her overdue mortgage payments. Pardo requested a review of the Loan for modification but failed to provide all of the information required for the review.

On March 18, 2013, MERS assigned the deed of trust to Ocwen. Ocwen referred the Loan for foreclosure on April 15, 2013. On April 19, 2013, Ocwen

---

[1] Clerk's Papers (CP) at 2596.
[2] CP at 2641.

3

completed a sworn beneficiary declaration stating that "Ocwen Loan Servicing, LLC is the holder of the promissory note or other obligation secured by the Deed of Trust."[3]

Soon after, Ocwen agreed to a trial modification period for the Loan. According to the terms, Pardo would be eligible for revaluation of the Loan for permanent modification if she completed three payments during the trial period. Ocwen also agreed to discontinue foreclosure proceedings if Pardo complied with the terms of the trial period. Pardo received multiple notifications regarding the trial modification period, but failed to make any payments. Ocwen then notified Pardo that the Loan modification review had been discontinued.

In July 2013, Ocwen approved a second trial modification period for the Loan. Pardo again failed to make any of the trial payments and Ocwen notified her that the loan modification review had been discontinued.

Ocwen appointed NWTS as its successor trustee in August 2013. In September 2013, NWTS notified Pardo that she was in default on the Loan and provided information to help her seek immediate assistance. NWTS issued a notice of trustee's sale to Pardo in November 2013. The notice included a recommendation that Pardo contact a housing counselor or attorney without delay.

Between November 2013 and January 2014, Pardo sent several letters to NWTS concerning the trustee's sale of her home. The first letter was titled "RESPA QUALIFIED WRITTEN REQUEST – COMPLAINT, DISPUTE OF DEBT &

---

[3] CP at 149 (boldface omitted).

VALIDATION OF DEBT LETTER, TILA REQUEST."[4] She described the letter as "A FORM OF PRE-TRIAL DISCOVERY."[5] She requested all records and documents pertaining to the "alleged" Loan, including the original Note, and posed many questions related to the mortgage, assignments, and servicing of the Loan.[6] She alleged fraudulent withholding of information and loan servicing errors. In response, NWTS provided Pardo with a copy of the Note and strongly encouraged her to engage counsel to pursue possible legal remedies.

Pardo sent three other letters to NWTS, which she described as notices of default and opportunities to cure. These letters asked NWTS to provide the Loan payoff amount and evidence establishing the identity of the lawful holder of the Note. NWTS responded with the Loan payoff information and advised Pardo that foreclosure would proceed absent new direction from the loan servicer or new information justifying a delay.

Pardo took no action to enjoin the trustee's sale, which took place on March 14, 2014.

Soon after the trustee's sale, Pardo filed suit against Ocwen, Fannie Mae, MERS, MERSCORP, NWTS, and NWTS's representative RCO Legal (collectively, the defendants), alleging that the trustee's sale violated the DTA, the CPA, and the Criminal Profiteering Act, chapter 9A.82 RCW. She also alleged negligence,

---

[4] CP at 1961 (boldface omitted). Pardo intended the letter to be a "'qualified written request'" under the federal Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e). CP at 1961-62. She also alleged fraudulent withholding of disclosures and documentation in violation of the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601. CP at 1962.

[5] CP at 1961 (boldface omitted).

[6] CP at 1962-68.

breach of contract, and civil conspiracy. She based these claims on the theory that Ocwen was not the holder and lawful beneficiary of the Note when it appointed NWTS as the successor trustee.

In June 2015, Pardo and the defendants filed several motions for summary judgment, all of which the trial court denied. The defendants filed a joint request for reconsideration of their motion for summary judgment. Pardo filed a motion for reconsideration of her partial summary judgment motion against Ocwen regarding the issue of its status as holder and lawful beneficiary of the Note.

In response to Pardo's motion for reconsideration, the trial court requested further briefing from Ocwen concerning Ocwen's status as the holder of the Note. In August 2015, the trial court determined that Ocwen was not the holder of the Note and granted Pardo's motion for reconsideration. The trial court also granted the motion for reconsideration for MERS and MERSCORP and dismissed Pardo's claims against them.[7]

In September 2015, Ocwen filed a motion for discretionary review in this court. The motion was denied by a commissioner of this court on November 13, 2015.

In July 2016, Pardo filed a motion to amend her complaint, which the trial court granted. Several additional motions for summary judgment were filed following amendment of the complaint. NWTS and RCO Legal filed a motion for summary judgment, which was granted and the claims dismissed.[8] Ocwen and

---

[7] Pardo does not appeal this decision.
[8] Pardo does not appeal this decision.

Fannie Mae filed a separate motion for summary judgment against Pardo. Pardo filed a motion for summary judgment against all defendants.

The trial court requested supplemental briefing on the issue of Ocwen's status as holder of the Note. After considering the supplemental briefing and hearing additional oral argument, the trial court granted summary judgment in favor of Fannie Mae and Ocwen and dismissed Pardo's claims with prejudice. Pardo filed a motion for reconsideration, which the trial court denied.

Pardo appeals only the order granting summary judgment in favor of Ocwen.[9] She does not seek review of the trial court's summary judgment decisions in favor of MERS, MERSCORP, NWTS, and RCO Legal.

ANALYSIS

Holder of the Note under the DTA

Pardo's arguments on appeal rest on the premise that Ocwen was not the holder of the Note, and therefore was an unlawful beneficiary. Ocwen responds that it had constructive possession of the Note, as transferred by Fannie Mae and held by Ally. We agree that Ocwen had constructive possession of the Note and was the lawful beneficiary.

The DTA "creates a three-party transaction in which a borrower conveys the mortgaged property to a trustee, who holds the property in trust for the lender as security for the borrower's loan." Barkley v. GreenPoint Mortg. Funding, Inc., 190 Wn. App. 58, 65, 358 P.3d 1024 (2015), review denied, 184 Wn.2d 1036, 379 P.3d

---

[9] In Pardo's reply brief, she states that she "does not seek review of the dismissal of Defendants Fannie Mae, RCO Legal, P.S., Northwest Trustee Services, MERS, or MERSCORP Holdings, Inc." See Appellant's Reply Br. at 1 n.1.

953 (2016). If the borrower defaults, the lender must strictly comply with the requirements of the DTA to nonjudicially foreclose on the property through a trustee's sale. Barkley, 190 Wn. App. at 65-66. One requirement for a trustee's sale is that "the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust." RCW 61.24.030(7)(a).

The DTA defines "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). Washington courts have construed RCW 61.24.005(2) as requiring the beneficiary to be the actual holder of the note or other debt instrument. Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 89, 285 P.3d 34 (2012).

The holder of the note may have actual or constructive possession. See RCW 62A.3-201 U.C.C. cmt. 1 (a holder may possess a note "directly or through an agent"); Gleeson v. Lichty, 62 Wash. 656, 659, 114 P. 518 (1911) ("But, if we assume that the note was not in [the defendant's] actual possession, it was clearly under his control, and therefore constructively in his possession."); Barkley, 190 Wn. App. at 69 (bank was holder of the note through its agent). This constructive control may occur through an agent. Bain, 175 Wn.2d at 106.

The DTA requires proof of the beneficiary's status as the holder of the note as a prerequisite to a trustee's sale. RCW 61.24.030(7)(a). "A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note" is sufficient proof that the beneficiary is, in fact, the holder. RCW 61.24.030(7)(a); see Brown v. Wash. State Dep't of

Commerce, 184 Wn.2d 509, 544, 359 P.3d 771 (2015) ("[A] party's undisputed declaration submitted under penalty of perjury that it is the holder of the note satisfies RCW 61.24.030(7)(a)'s requisite to a trustee sale"). "[O]nly the actual holder of the promissory note . . . may be a beneficiary with the power to appoint a trustee to proceed with a nonjudicial foreclosure on real property." Bain, 175 Wn.2d at 89. When an unlawful beneficiary appoints a successor trustee, "the putative trustee lacks the legal authority to record and serve a notice of trustee's sale." Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 306, 308 P.3d 716 (2013), abrogated in part on other grounds by Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 334 P.3d 529 (2014).

An appellate court reviews de novo an order granting summary judgment and performs the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c); Owen, 153 Wn.2d at 787.

*Ocwen as Holder of the Note*

In this case, Fannie Mae became the owner and holder of the Note upon purchase of the Loan. Fannie Mae constructively held the Note through Ally while Ocwen serviced the Loan under the terms established in the Guide. The Guide listed foreclosure actions among the "limited circumstances" that would alter Fannie Mae's status as the holder of the Note.[10] Specifically, the Guide stated that

> [i]n order to ensure that a servicer is able to perform the services and duties incident to the servicing of the mortgage loan, Fannie Mae temporarily gives the servicer possession of the mortgage note

---

[10] CP at 2596.

whenever the servicer, acting in its own name, represents the interests of Fannie Mae in foreclosure actions.[11]

The Guide further specified that the "temporary transfer of possession occurs automatically and immediately upon the commencement of the servicer's representation, in its name, of Fannie Mae's interests in the foreclosure."[12]

These provisions of the Guide controlled possession of the Note in the case at hand. As stated in the Guide, Ocwen, as servicer of the Loan, received temporary possession of the Note at the commencement of foreclosure proceedings against the home. Possession of the Note "automatically and immediately" transferred from Fannie Mae to Ocwen when foreclosure proceedings began.[13] Further, Ocwen filed a sworn beneficiary declaration on April 19, 2013, thus fulfilling the requirement for proof of beneficiary status under RCW 61.24.030(7)(a). See Brown, 184 Wn.2d at 544.[14] Thus, Ocwen became the holder of the Note and lawful beneficiary.

---

[11] CP at 2597.

[12] CP at 2597.

[13] CP at 2597.

[14] A similar transfer of holder status was discussed without disapproval in Brown, where the Freddie Mac Servicer's Guide provided that the servicer would gain actual or constructive possession of the original note before commencement of foreclosure proceedings. 184 Wn.2d at 523. Under the terms of the Freddie Mac Servicer's Guide, "the servicer is deemed to be in constructive possession of the note when the servicer commences a legal action." Brown, 184 Wn.2d at 523. The Washington Supreme Court determined that this split of ownership from note enforcement was authorized and did not criticize the procedure. Brown, 184 Wn.2d at 523.

In the same way, Ocwen becomes the holder of the Note for the purposes of the foreclosure action under the terms of the Guide. As the holder of the Note, Ocwen was the lawful beneficiary entitled to appoint a successor trustee. See Walker, 176 Wn. App. at 306; Bain, 175 Wn.2d at 89.

*Ocwen's Constructive Possession of the Note*

Pardo also challenges Ally's ability to hold the Note on Ocwen's behalf. Specifically, she argues that Ally could not hold the Note for Ocwen as its agent because Ally was required to act exclusively on behalf of Fannie Mae. But the provisions of the Guide and the Custodial Agreement provide otherwise, allowing Ally to be the agent and hold the Note for both Ocwen and Fannie Mae in light of their common interests.

"[A]n agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control." Moss v. Vadman, 77 Wn.2d 396, 402-03, 463 P.2d 159 (1970). This control of the agent by the principal is a prerequisite of agency. Bain, 175 Wn.2d at 107.

Under the terms of the Custodial Agreement between Ocwen and Ally, Ally was required to hold documents "for and on behalf of" Ocwen.[15] The Custodial Agreement also outlined other duties that Ally was to perform on behalf of Ocwen. For example, Ally was obligated to transfer physical possession of the Note to Ocwen within two business days of a proper request.[16] Ocwen agreed to pay for these services and could terminate the relationship. Thus, under the Custodial Agreement, Ally was required to perform duties on behalf of Ocwen and was subject to Ocwen's control. Ocwen maintained ultimate control over the

---

[15] CP at 2641.
[16] In July 2014, Ocwen requested the Note from Ally and received the original note the next day.

relationship, with the ability to request documents and terminate the relationship. Therefore, the Custodial Agreement established the requisite accountability and control of a principal over its agent to create an agency relationship between Ocwen and Ally.

Pardo argues that Ally could not serve as Ocwen's agent because the Guide, which was incorporated by the Custodial Agreement, specified that "[i]f Fannie Mae possesses the note through a document custodian, the document custodian has custody of the note for Fannie Mae's exclusive use and benefit."[17]

But the Guide also established provisions for the role of the document custodian upon transfer of possession of a note to a servicer. For those notes held by a document custodian, "the custodian also has possession of the note on behalf of the servicer so that the servicer has constructive possession of the note and the servicer shall be the holder of the note and is authorized and entitled to enforce the note in the name of the servicer for Fannie Mae's benefit."[18]

Based on this provision of the Guide, Ocwen became the holder of the Note through constructive possession even though the Note remained in Ally's physical custody. By transferring constructive possession of the Note to Ocwen, Ally properly performed its duties under both the Guide and the Custodial Agreement. Thus, in the context of the foreclosure proceedings initiated against the home, Fannie Mae's and Ocwen's interests were aligned and there was no conflict inherent in Ally's role as document custodian for both Fannie Mae and Ocwen.[19]

---

[17] CP at 2596.

[18] CP at 2597.

[19] Pardo also contends that Ocwen did not possess the Note because Ally's custodial log book showed that Ally continuously held the Note for Fannie Mae from March 2008

Based on the terms of the Guide and Custodial Agreement, constructive possession of the Note transferred to Ocwen, making Ocwen the lawful beneficiary for the purposes of the DTA. As the lawful beneficiary, Ocwen had the legal authority to appoint a successor trustee to conduct the sale of Pardo's property. Therefore, we affirm the trial court's decision to dismiss Pardo's DTA claim with prejudice.

## Additional Claims

Pardo raises CPA, CLA, and negligence claims based on Ocwen's allegedly deceptive behavior of posing as the beneficiary without being the actual holder of the Note. Pardo concedes that these claims fail if Ocwen was the lawful holder of the Note. Because Ocwen had constructive possession of the Note and was the beneficiary, we accept Pardo's well-taken concession as to her additional claims.

Finally, Pardo requests her fees on appeal under RAP 18.1(a) and RCW 19.86.090. Reasonable attorney fees are available for successful CPA claims. RCW 19.86.090. This includes attorney fees on appeal. Nguyen v. Glendale Constr. Co., Inc., 56 Wn. App. 196, 208, 782 P.2d 1110 (1989). Pardo has not prevailed on her CPA claim below or on appeal and therefore is not entitled to recover her reasonable attorney fees on appeal.

---

through July 2014, including the time period of the foreclosure proceedings beginning April 2013 and ending with the trustee's sale on March 14, 2014. The log shows that the Note was released and physically transferred to Ocwen on July 31, 2014.

Despite the lack of a record in the computer system, the Guide specified that at the commencement of foreclosure proceedings, constructive possession of the Note automatically transfers from Fannie Mae to the loan servicer while held by the document custodian. This transfer is immediate and automatic, without any additional requirements. Ally's failure to record the transfer of the Note in its internal computer tracking system did not alter or abrogate the process outlined in the Guide or impact Ocwen's status as the holder of the Note under the terms of the Guide.

No. 76622-8-I / 14

Affirmed.

Trickey, J

WE CONCUR:

Spearman, J.                              Dwyer, J.

14

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2018 JUL 30 AM 9: 12