**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KAISER FOUNDATION HEALTH PLAN, INC., d/b/a KAISER FOUNDATION HEALTH PLAN, f/k/a GROUP HEALTH COOPERATIVE, | No. 82498-8-I |
| Respondent, | DIVISION ONE |
| v. | |
| LAURA BRICE and JOHN DOE BRICE, and the marital community comprised thereof, | PUBLISHED OPINION |
| Appellants. | |

SMITH, A.C.J. — Laura Brice suffered complications from a negligent tooth extraction that led to permanent disabilities. Her follow-up medical care was covered by Medicare as administered by Kaiser Foundation Health Plan, a Medicare Advantage Organization (MAO). Brice eventually settled with the dentist for $1,427,870, and Kaiser charged Brice $190,747.13 for reimbursement of the medical services it had covered. Brice disputed the amount of one of these items where Kaiser paid more than the hospital had billed. Kaiser brought a declaratory judgment action to enforce its reimbursement right, and the court granted summary judgment for Kaiser. Brice appealed, contending that Kaiser was only entitled to reimbursement for the amounts it had been billed and that the court was required to reduce Kaiser's reimbursement right to share the attorney fees and costs incurred in obtaining the settlement. Because Kaiser

was entitled to reimbursement for the full costs it incurred where Brice's settlement covered these costs, and because attorney fee sharing is not required when an insurance company must file suit to obtain its reimbursement because the insured party opposes its recovery, we affirm.

FACTS

In July 2013, Laura Brice suffered complications from a tooth extraction that led to facial and neck disfigurement and permanent disabilities. Brice incurred extensive medical bills for follow-up care, which were covered by Kaiser.[1]

In June 2016, Brice sued the dentists involved in the tooth extraction for medical negligence. The parties engaged in discovery, hiring experts and conducting depositions to determine liability. In October 2017, Brice's newly retained lawyer, David Balint, sent a letter to Kaiser informing it of the personal injury suit. In anticipation of settlement negotiations, he requested a ledger showing Kaiser's claimed reimbursement interests. Kaiser sent a log showing the medical expenses it had paid on Brice's behalf, coming to a total of $192,637.99. This included $113,387.18 that Kaiser had paid for Brice's stay at Virginia Mason Medical Center from November 3 to November 7, 2014, for which Virginia Mason had only charged $50,088.86. Balint responded, requesting that Kaiser reduce its reimbursement claim to represent the amount billed. Kaiser

---

[1] At the time Brice enrolled in her insurance, it was provided by Group Health Cooperative, which is now part of Kaiser.

declined to do so, explaining that the payment was based on its contractual arrangement with Virginia Mason and based on Medicare rules and procedures.

On February 22, 2018, Brice settled with one of the dentists for $1,427,870. The settlement agreement provided that Brice would satisfy and be solely responsible for any of Kaiser's rights of subrogation from the proceeds of the settlement. On October 17, 2018, Balint informed Kaiser that the case had settled. The parties continued to dispute the value of Kaiser's reimbursement interest. In September 2019, Balint sent a trust check for $25,000 to Kaiser based on his valuation of what the disputed charge should have been.

On January 23, 2020, Kaiser sued for declaratory relief regarding its right to be reimbursed in the amount of the medical expenses it had paid. Brice answered with affirmative defenses and a counterclaim, asserting that Brice had fully satisfied Kaiser's interest and that Kaiser was violating the Washington Consumer Protection Act. The parties filed cross motions for summary judgment, and the court granted summary judgment to Kaiser, declaring that Kaiser had a right to be reimbursed in the amount of $165,747.13, the amount remaining after Brice's partial payment of $25,000 is subtracted from the full $190,747.13 that Kaiser paid.

Brice appeals.

## BACKGROUND

Medicare is a "federal health insurance program primarily benefitting those 65 years of age and older." Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146,

No. 82498-8-I/4

1152 (9th Cir. 2013). Under the Medicare Act, Medicare insurance is "secondary to any 'primary plan' [that is] obligated to pay a Medicare recipient's medical expenses," including a third-party tortfeasor's liability insurance policy or plan.[2] Parra, 715 F.3d at 1152 (quoting 42 U.S.C. § 1395y(b)(2)(A)). Medicare may pay for such expenses anyway if the primary plan "has not made or cannot reasonably be expected" to pay for the service "promptly," but this secondary payment is "conditioned on reimbursement." 42 U.S.C. § 1395y(b)(2)(B)(i). The responsibility to reimburse Medicare extends to both "a primary plan[ ] and an entity that receives payment from a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(ii).

"In 1997, Congress enacted Medicare Part C, providing for Medicare Advantage plans." Parra, 715 F.3d at 1152. "Part C allows eligible participants to opt out of traditional Medicare and instead obtain various benefits through MAOs, which receive a fixed payment from the United States for each enrollee." Parra, 715 F.3d at 1152; 42 U.S.C. §§ 1395w-21, 1395w-23. Like Medicare, MAOs may seek reimbursement for secondary payments they make toward medical services for which a primary plan is responsible. 42 U.S.C. § 1395w-22(a)(4).

"All payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries."

---

[2] Moreover, "[a]n entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." 42 U.S.C. § 1395y(b)(2)(A). This means potential tortfeasors like the dentists in this case are considered primary payers regardless of their insured status.

4

42 C.F.R. § 413.9.  The Medicare Act "explicitly delegates to the Secretary [of Health and Human Services] the authority to develop regulatory methods for the estimation of reasonable costs."  Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 418, 113 S. Ct. 2151, 124 L. Ed. 2d 368 (1993).  To achieve this pricing scheme, the Centers for Medicare and Medicaid Services "establishes a classification of inpatient hospital discharges by Diagnosis-Related Groups" and assigns each an "appropriate weighting factor" to calculate appropriate costs. 42 C.F.R. § 412.60.

ANALYSIS

Brice contends that the court erred by granting summary judgment for Kaiser.  Specifically, she contends that the court could not properly consider a declaration filed by Kaiser with its reply memorandum on summary judgment; that Kaiser's recovery should have been limited to the amount it was billed, rather than the full amount it paid; and that Kaiser's recovery should have been reduced by a proportionate amount of the attorney fees and costs Brice incurred to obtain the settlement funds.  We address each issue in turn.

Standard of Review

"Summary judgment is appropriate where there is no genuine issue as to any material fact, so the moving party is entitled to judgment as a matter of law." Meyers v. Ferndale Sch. Dist., 197 Wn.2d 281, 287, 481 P.3d 1084 (2021).  "We view the facts and reasonable inferences in the light most favorable to the nonmoving party."  Meyers, 197 Wn.2d at 287.  "We review rulings on summary

judgment and issues of statutory interpretation de novo." Am. Legion Post No. 149 v. Dep't of Health, 164 Wn.2d 570, 584, 192 P.3d 306 (2008). "Contract interpretation is a question of law for the court when it is unnecessary to rely on extrinsic evidence." Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Const. Co., 176 Wn.2d 502, 517, 296 P.3d 821 (2013).

Reply Declaration of Pamela Henley

As a threshold issue, Brice contends that we should disregard the declaration of Pamela Henley filed with Kaiser's reply in support of summary judgment. Brice challenges this declaration on the grounds that Henley did not certify that it was based on her personal knowledge and that the declaration raised new issues that were not in strict rebuttal.[3] We are not persuaded.

With respect to the personal knowledge issue, Brice is presumably relying on CR 56(e), which requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Henley's first declaration explicitly stated that it was made

---

[3] Brice did not challenge Kaiser's submission of the declaration in the trial court, and so we need not consider this assignment of error under RAP 2.5(a). Nonetheless, we exercise our discretion to do so. Brice also did not raise this issue in her assignments of error or in a separate section of her brief, but instead addressed it in her facts section. Although this violates RAP 10.3(a) and (g), we exercise our discretion to consider issues "despite one or more technical flaws in an appellant's compliance with the Rules of Appellate Procedure" as long as the issues are clearly argued and the respondent is not prejudiced. State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

"based upon [her] own personal knowledge and [her] review of Kaiser's files and records,"[4] and explained that as part of her duties she "monitor[ed] the medical expenses paid by Kaiser on behalf of Defendant Brice for medical services arising from [the tooth extraction,] evaluate[d] Kaiser's right to obtain reimbursement for those payments from the proceeds of settlement . . . , and [sought] reimbursement for the medical expenses Kaiser paid on Defendant Brice's behalf."  These statements demonstrate Henley's knowledge of and competence to testify about the information shared in her reply declaration, which include a redacted copy of a claim for Brice's medical care, a screenshot of the Medicare pricer tool used by Kaiser, and a copy of the completed priced claim for Brice's inpatient care.  Brice cites no case indicating that a declarant must repeat statements about her personal knowledge in a follow-up declaration, and given that the civil rules must be "construed and administered to secure the just, speedy, and inexpensive determination of every action," we are not persuaded that this was required.  CR 1.

Moreover, Brice is incorrect that Kaiser could not submit new evidence along with its summary judgment reply.  Brice relies on cases indicating that a party cannot raise new issues on rebuttal, White v. Kent Med. Ctr., Inc., PS, 61 Wn. App. 163, 168, 810 P.2d 4 (1991), but Kaiser did not raise new issues. Instead, Kaiser provided additional evidence to support an argument it had

---

[4] "Statements in a declaration based on a review of business records satisfy the personal knowledge requirement of CR 56(e) if the declaration satisfies the business records statute, RCW 5.45.020."  Barkley v. GreenPoint Mortg. Funding, Inc., 190 Wn. App. 58, 67, 358 P.3d 1204 (2015).

No. 82498-8-I/8

already raised: that it was entitled to reimbursement for the full amount it paid on Brice's behalf. "Until a formal order granting or denying the motion for summary judgment is entered, a party may file affidavits to assist the court in determining the existence of an issue of material fact." Cofer v. Pierce County, 8 Wn. App. 258, 261, 505 P.2d 476 (1973).

Accordingly, we consider all the evidence considered by the superior court, including Henley's reply declaration.

<u>Value of Reimbursable Medical Expenses</u>

Brice claims that the trial court erred by concluding that Kaiser had the right to be reimbursed for the full amount of its payments on Brice's behalf, and contends that Kaiser's right to reimbursement should be limited to the reasonable value of the medical expenses.[5] We disagree.

42 U.S.C. § 1395w-22(a)(4) provides,

Notwithstanding any other provision of law, a [Medicare Advantage[6]] organization may (in the case of the provision of items

---

[5] " 'Reimbursement' permits an insurer to be reimbursed by its insured from proceeds that the insured collects . . . from the party at-fault," while " 'subrogation' is an equitable doctrine" permitting the insurer to collect directly from the party at-fault. Winters v. State Farm Mut. Auto. Ins. Co., 144 Wn.2d 869, 875-76, 31 P.3d 1164 (2001). Because both the statute and Brice's Medicare plan permit Kaiser to recover from a tortfeasor or from proceeds Brice collected from a tortfeasor, this distinction is not at issue in this case.

[6] "The current Part C Medicare Advantage program was formerly known as 'Medicare+Choice,' and many Part C provisions still use that terminology. When Congress made revisions to the program and changed the name in 2003, it provided that 'any reference to the program under part C of title XVIII of the Social Security Act shall be deemed a reference to the Medicare Advantage program and, with respect to such part, any reference to "Medicare+Choice" is deemed a reference to "Medicare Advantage" and "MA".' " Humana Med. Plan, Inc. v. Reale, 180 So. 3d 195, 199 n.3 (Fla. Dist. Ct. App. 2015) (quoting

8

and services to an individual under a [Medicare Advantage] plan under circumstances in which payment . . . is made secondary pursuant to section 1395y(b)(2) of this title) charge . . . , in accordance with the charges allowed under a law, plan, or policy[7] described in such section—

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

The medicare regulations also provide that "[i]f a Medicare enrollee receives from an [MAO] covered services that are also covered . . . under any liability insurance policy or plan, . . . the [MAO] may bill . . . . [t]he Medicare enrollee, *to the extent that he or she has been paid by the carrier . . . for covered medical expenses*. 42 CFR § 422.108(d) (emphasis added).

Here, Brice's settlement with the dentists appears to have paid her to the full extent of Kaiser's medical expenses. The settlement provided, in reference to Brice's Kaiser plan, that "Medicare's interests in reimbursement for *any incurred medical expenses that have been paid* by Medicare have either already been satisfied or will be satisfied from the settlement proceeds." (Emphasis added.) It also specified "that satisfaction of any and all of Medicare's interests shall be the sole and exclusive responsibility of Laura Brice" and that Brice would "satisfy from the proceeds of this settlement and be solely responsible for any and all . . . rights of subrogation, including those of the Kaiser Permanente

Medicare Prescription Drug, Improvement, and Modernization Act of 2003, P.L. 108–173, 117 Stat. 2066).

[7] This language appears to refer to § 1395y's definition of "primary plan" as including "a workmen's compensation law or plan, an automobile or liability insurance policy or plan . . . or no fault insurance." 42 U.S.C. § 1395y(b)(2).

No. 82498-8-I/10

MedAdvantage Plan." Because the statute gives Kaiser the right to be reimbursed "to the extent" that Brice has been paid by the primary plan, and Brice was paid by the primary plan to the full extent of "any incurred medical expenses" that Kaiser paid, we conclude that under 42 U.S.C. § 1395w-22(a)(4), Kaiser is entitled to reimbursement for the full value of the medical expenses it incurred.

Furthermore, the outcome under Brice's coverage agreement is the same. Brice's coverage plan provided that, if Brice was injured by another party and Kaiser provided benefits for medical services as a result, Brice "shall reimburse [Kaiser] for all benefits provided, from any amounts [Brice] received . . . on account of such injury . . . whether by suit, settlement or otherwise." If Brice's injury led to a settlement with a third party, Kaiser had the right to recover its medical expenses, which were defined as "the expenses incurred and the value of the benefits provided by [Kaiser] under this Agreement." It appears that "the expenses incurred" are the full $190,747.13 Kaiser paid on Brice's behalf. Brice asks us to focus on "the value of the benefits" language[8] and contends that the amount Virginia Mason billed for the November 2014 inpatient stay was the actual value of those services. But the Medicare Act defines the monetary worth of services by requiring the Secretary to establish "reasonable compensation equivalent for such services." 42 U.S.C. § 1395xx(a)(2)(B) (discussing payments

---

[8] Value means the "amount of a commodity, service, or medium of exchange that is the equivalent of something else" or "the monetary worth of something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2530 (2002).

10

for certain services paid on a reasonable cost basis); see also id. at 1395xx(a)(1)(A) (establishing other services that are reimbursed as physicians' services under Medicare Part B); 42 CFR § 405.501 (providing that "Medicare pays no more for Part B medical and other health services than the 'reasonable charge' for such service."); 42 U.S.C. § 1395ww(a)(1)(A)(i) (providing limits on when Secretary may recognize operating costs of inpatient hospital services as "reasonable").  Because Kaiser paid what was required by Medicare's compensation scheme, the value of the expenses and the amount incurred are equal.

Brice contends that, because she only had the right to recover any money from the dentist under Washington law, Kaiser's right to recover from her should be limited by Washington law, and should therefore be limited to the "reasonable value" of her medical expenses.  See, e.g., Hayes v. Wieber Enters., Inc., 105 Wn. App. 611, 615-16, 20 P.3d 946 ("Plaintiffs in negligence cases are permitted to recover the reasonable value of the medical services they receive, not the total of all bills paid.").  Brice relies on a declaration from her expert that the charges billed by Virginia Mason for her November 2014 stay were reasonable.  Brice's argument fails for multiple reasons.  First, the federal reimbursement statute preempts Washington law because it applies "[n]otwithstanding any other provision of law."[9]  42 U.S.C. § 1395w-22(a)(4).  The accompanying regulation

---

[9] "Under the preemption doctrine, states are deemed powerless to apply their own law due to restraints deliberately imposed by federal legislation." Alverado v. Wash. Pub. Power Supply Sys., 111 Wn.2d 424, 430-31, 759 P.2d 427 (1988).

makes clear that it "supersede[s] any State laws, regulations, contract requirements, or other standards that would otherwise apply to [Medicare Advantage] plans. A State cannot take away an MA organization's right under Federal law and the [Medicare secondary payer] regulations to bill . . . for services for which Medicare is not the primary payer." 42 CFR § 422.108(f). Second, while Brice has provided, for the purposes of this case, an expert saying the amount billed was reasonable, nothing would prevent her from contending to a jury that the amount Kaiser paid, in accordance with Medicare pricing schemes, was the reasonable value of her medical expenses.[10] Third, if a jury did award Brice less than the amount Kaiser paid, Kaiser would only be reimbursed to the extent that Brice was awarded damages for the medical services under 42 U.S.C. § 1395w-22(a)(4). Because Kaiser can only be reimbursed to the extent Brice was paid for the services, and Brice's settlement fully paid for her medical expenses, we reject Brice's portrayal of this outcome as inequitable or illogical when considered alongside Washington law.

### Reduction of Reimbursement for Attorney Fees

Brice next challenges the court's failure to provide for any equitable sharing of attorney's fees and costs on Kaiser's part. Again, we find no error.

As an initial matter, Kaiser contends that Brice waived this issue by not raising it below under RAP 2.5(a). We disagree. Brice discussed this issue at

---

[10] Under Washington law, medical expenses may be reasonable even if the amount paid is different from what is normally charged by providers or paid by insurance. Gerlach v. Cove Apartments, LLC, 196 Wn.2d 111, 124 n.8, 471 P.3d 181 (2020).

length below, and, contrary to Kaiser's contention, replied specifically to Kaiser's argument that equitable fee sharing could not take place if Brice opposed Kaiser's right to recover. Brice is not raising a new issue merely because she approaches her argument in a different way.

As a general rule, "Medicare reduces its recovery to take account of the cost of procuring the judgment or settlement . . . if— (i) Procurement costs are incurred because the claim is disputed; and (ii) Those costs are borne by the party against which [Medicare] seeks to recover." 42 C.F.R. § 411.37(a)(1). However, if Medicare "must file suit because the party that received payment opposes [Medicare]'s recovery, the recovery amount is" reduced to the lesser of the settlement amount minus the party's procurement cost and Medicare's payment. 42 C.F.R. § 411.37(a)(2), (e). The Eleventh Circuit explained this regulation as meaning that a "beneficiary's procurement costs do not offset an MAO's recovery if the MAO must litigate to secure repayment." Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 832 F.3d 1229, 1240 (11th Cir. 2016). In that case, the court rejected the primary plan's argument that it provided for appropriate reimbursement by placing the disputed amount into trust, because the regulations required the plan to reimburse Medicare directly. Humana, 832 F.3d at 1239-40; see also Cox v. Shalala, No. 6:93CV00436, 1995 WL 638620, at *5 (M.D.N.C. June 7, 1995) (unpublished), aff'd, 112 F.3d 151 (4th Cir. 1997) ("In this case, the Secretary was forced to defend against Plaintiffs' declaratory

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

judgment action and brought a counterclaim for reimbursement. These actions place this case within the ambit of § 411.37(e).").

By contrast, in Estate of Washington v. United States Secretary of Health and Human Services, the Tenth Circuit held that "because [the beneficiary] only questioned the amount of reimbursement owed and only instituted a declaratory judgment action," the general rule of attorney fee sharing applied. 53 F.3d 1173, 1175 (10th Cir. 1995). In that case, the beneficiary's estate initiated a declaratory judgment action to determine what amount of reimbursement was appropriate in a case where the beneficiary's settlement with the tortfeasor only covered a portion of her damages. Estate of Washington, 53 F.3d at 1175. In holding that the declaratory judgment action did not trigger 42 C.F.R. § 411.37(e), the court noted that "[t]his result may well have been reached far earlier, and at far less cost, if the government had been more forthcoming about the authority supporting its rejection of the Estate's proportionality theory." Estate of Washington, 53 F.3d at 1176.

Here, we conclude that the special rule under 42 C.F.R. § 411.37(a)(2), (e) applies. The issue is whether Kaiser *had to* file suit because of Brice's *opposition* to its recovery. Unlike Estate of Washington, in which the beneficiary proactively sought an answer to its question, here it was Kaiser who had to bring an action to enforce its right to be reimbursed. Also unlike Estate of Washington, where the insurer could have avoided litigation by being more forthcoming about the authority supporting its theory, here it is unclear that Kaiser had better

14

alternatives available to it than bringing suit. Although Brice characterizes herself as not "opposing" Kaiser's recovery, her answer to Kaiser's complaint asked the court to find that her $25,000 payment constituted payment in full for Kaiser's reimbursement interest, despite her admission on appeal that Kaiser is entitled to at least $78,442.51. She also asked the court to find that Kaiser's claims were barred by the doctrines of unclean hands and laches and that Kaiser had violated the CPA, and she only paid Kaiser $25,000 in the two years between settlement and Kaiser filing suit. We conclude that this case is unlike Estate of Washington. The court did not err by declining to reduce the reimbursement amount by a proportional share of attorney fees.

We affirm.

_Smith, a.C.J._

WE CONCUR:

_Dwyer, J._  _Verellen, J._

15